FIRST NATIONAL BANK OF WICHITA FALLS v. R. V. FITE, GUARDIAN, ET AL.

No. 7068.   Decided May 4, 1938.
Rehearing overruled June 1, 1938.
(115 S. W., 2d Series, 1105.)

*J. T. Montgomery,* of Wichita Falls, for plaintiff in error.

Where bank has contracted to rent a safety deposit box to two persons jointly the bank is not liable to a third person whose property is placed in said box by the renters, and the bank permits the removal of same without knowledge or notice that the property of such third party, or person, had been placed in said box, even though the bank be negligent. The bank having no contract with the third party is not liable to him even for negligence. Coons v. Philmont Natl. Bank, 218 N. Y. Supl. 189; Roberts v. Yarboro, 41 Texas 449; 67 C. J. 597.

*Edgar M. Mann,* of Wichita Falls, for defendant in error.

On the proposition as stated above. 10 Tex. Jur., par. 100, page 312; Kempner v. Dillard, 100 Texas 505, 101 S. W. 437;

Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 89 S. W. (2d) 385.

Mr. Presiding Judge Harvey delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted by the defendant in error, R. V. Fite, guardian of the estate of Harry Francis Brevoort and Charles Brevoort, minors, to recover of Mrs. Keturah Brevoort and the First National Bank of Wichita Falls, Texas, the market value of certain bonds. As against Mrs. Brevoort, the suit is for conversion of said bonds. As against the said bank, the suit it for damages for the breach of a contract relating to the safety deposit box in the bank from which the bonds were taken by Mrs. Brevoort and converted to her own use. Mrs. Brevoort filed no answer, and the trial court rendered judgment by default against her. As between the guardian and the bank, the case was tried before the court without a jury, resulting in a judgment in favor of the bank. The guardian appealed and the Court of Civil Appeals reversed the judgment of the trial court in this last mentioned respect and rendered judgment against the bank. 90 S. W. (2d) 913. The bank was granted the writ of error.

At the trial of the case, the guardian offered testimony to prove the facts hereinafter stated, both as against Mrs. Brevoort and as against the bank. All of said testimony was admitted in evidence as against Mrs. Brevoort, but much of it was excluded from evidence as against the bank. Inasmuch, however, as the main contentions of the bank are to the effect that even if all such testimony had been admitted in evidence as against the bank no liability on the part of the bank to the minors or their guardian would appear, we find it convenient to make, as a basis for discussing the various contentions of the bank in this respect, a preliminary statement of the facts shown in testimony without regard to which portions of the testimony were excluded as against the bank. In the year 1930, H. S. Brevoort died in Wichita County leaving a will of which his widow, Mrs. Keturah Brevoort, is the duly appointed and acting independent executrix. The will was duly probated in the year 1930. The minors Harry Francis Brevoort and Charles Brevoort are the sons of the testator by a former marriage. These minor sons are designated in the will of their father as Harry Brevoort and Jack Brevoort. Paragraphs three and four of said will read as follows:

"Third: I hereby will and bequeath to my two sons, Harry

Brevoort and Jack Brevoort, the sum of Seventy-five Dollars each to be paid to them, or to their legal guardian, in cash, by my executrix hereinafter named, as soon as convenient after my demise and the probating of this will.

"FOURTH: I have an insurance policy for two thousand dollars in the Modern Woodmen of America, payable to my present wife, Keturah Brevoort and I hereby direct and request that my said wife, Keturah Brevoort shall out of the proceeds of said life insurance policy, pay to said two sons, Harry and Jack Brevoort, such sum or sums monthly, as she in her discretion shall deem proper, until such time as the full amount of such policy shall have been paid to them. In making the payments provided for in this paragraph, it is my wish and purpose and I so desire that my said wife, Keturah Brevoort shall exercise her sound judgment and discretion as to the amount she shall pay in any monthly payment, and I have full faith and confidence that she will carry out my wishes in this matter. These boys being now minors, if they have not reached the age of 21 years at the time of my death, and in order that no legal complications shall arise, these payments should be made to their legal guardian."

Mrs. Brevoort, shortly after the will was admitted to probate, collected the proceeds of the insurance policy mentioned in paragraph four of the will, amounting to the sum of $2000, and deposited same to her credit, as executrix, in the Security National Bank of Wichita Falls. A short time later the probate court of Wichita County, at the instance of the mother of said minors, together with Fite, the guardian of their estate, issued an order against the Security National Bank commanding said bank to hold said sum of $2000, and not pay over any part thereof to Mrs. Brevoort until otherwise ordered by the court. The bank obeyed this order. Following the issuance of this order, negotiations occurred between Mrs. Brevoort on the one hand and the attorney for the mother of said minors and Fite, the guardian, on the other hand. The subject of the negotiations was the conflicting claims to the fund mentioned. On behalf of the minors, it was claimed that the minors, through their guardian, were entitled to possession and control of said fund immediately, whereas Mrs. Brevoort claimed that she was entitled to possession and control. These matters in dispute between the parties were, after negotiations extending over a period of several days, finally compromised and settled by agreement of the parties. The compromise agreement is in the form of a letter of proposal by Mrs. Brevoort to Edgar Mann, attorney for the mother of the minors and for Fite, the guardian of their

estate, in which letter the terms proposed for the settlement of the dispute are stated. The terms proposed were duly accepted by the mother of the minors and the guardian. The compromise agreement was approved by the county judge of Wichita County, and the impounded fund was duly released to Mrs. Brevoort as contemplated by said agreement. The letter of proposal containing the terms of the agreement reads as follows:

"February 11, 1931.

"Mr. Edgar Mann
Attorney for Mrs. Mildred F. Hayes
Wichita Falls, Texas

Dear Sir:

"The undersigned is the Independent Executrix under the last Will and Testament of H. S. Brevoort. You brought a suit on behalf of Mrs. Mildred F. Hayes and her two minor children, Harry and Jack Brevoort, in the Probate Court of Wichita County, Texas, wherein certain funds aggregating $2,000.00 have been impounded. These funds are now held by me as trustee for the use and benefit of the two minor children, Harry and Jack Brevoort, who now reside with their mother, Mrs. Mildred F. Hayes, in California. In consideration of you immediately dismissing the aforesaid action now pending in the County Court, I agree to pay over to the guardian of said minors, towit, R. V. Fite of Wichita Falls, Texas, the sum of $50.00, being the balance due on the specific legacies provided for in the will of H. S. Brevoort, in the third paragraph of which he bequeathed to each of said minors the sum of $75.00.

"The $2,000.00 of insurance money now impounded, which is held by me for the use and benefit of said minors, shall be paid over to said guardian as follows, towit:

"$150.00 in cash on February 15, 1931; $150.00 on June 15, 1931; $250.00 on January 15, 1932; $250.00 on June 15, 1932; $300.00 on January 15, 1933; $300.00 on June 15, 1933; $300.00 on January 15, 1934, and $300.00 on June 15, 1934.

"There shall be deducted from the above mentioned, the sum of $25.00 for legal expenses and other legal expense necessarily incurred in carrying out this agreement, such as expense of lock-box and the like.

"It is proposed to immediately invest said funds in bonds of such nature as are eligible for purchase of life insurance companies under the laws of the State of New York and/or bonds issued by the Government of Australia, and/or bonds bearing a AA rating in Moody's Manual covering government bonds.

"The bonds, when purchased, shall be placed in a lock-box in the First National Bank of Wichita Falls, Texas, under the joint control of Charles I. Francis and myself.

"It is understood that if your client, Mrs. Mildred F. Hayes and the guardian of said minors shall in any way attempt to break this agreement, then I shall have all of my rights as Independent Executrix as completely and as fully as if there had never been made any stipulation or agreement of any kind or character with reference to the handling of said funds, it being my intention to handle same as outlined in this agreement, but such agreement, if broken by your clients, shall not in any way jeopardize or prejudice the rights which I now have under the law as Independent Executrix.

"Payment, as herein set forth, shall be a full, complete and final settlement with said guardian and said minors of all rights they have under the will aforesaid.

Yours truly,

KETURAH BREVOORT

ACCEPTED:                                    Independent Executrix
    MILDRED F. HAYES

R. V. FITE
Guardian of Harry and
Jack Brevoort, Minors.

Approved this 12th day of February, 1931.

JOHN P. MARRS,

County Judge."

The agreed testimony of Charles I. Francis is in the form of a written statement made by him and attached to the above letter. Said statement of Francis reads as follows:

"That I, Charles I. Francis of Wichita Falls, Wichita County, Texas, state that on or about the 11th day of February, 1931, wrote the letter addressed to Edgar Mann, attorney for Mrs. Mildred F. Hayes, for and on behalf of Mrs. Keturah Brevoort, independent executrix of the last will and testament of H. S. Brevoort, deceased; that said letter is hereto attached and marked 'Exhibit A.' That said letter was written in my office in Wichita Falls, Texas, in the presence of Edgar Mann, attorney for Mrs. Mildred F. Hayes, and her two minor children, Harry and Jack Brevoort, and also Mrs. Keturah Brevoort; that said agreement was signed by Mrs. Keturah Brevoort and delivered to Edgar Mann. Within a few days after the date of said letter, two One Thousand Dollar bonds, issued by the Government of Australia, were purchased by Mrs. Brevoort and placed

in a safety deposit box which had been rented from the First National Bank of Wichita Falls; that I was present when said two one thousand dollar bonds were placed in the said safety deposit box. That this was the last time I saw said bonds.

"Some time during May of 1933, I was advised by Edgar Mann that said bonds had been removed from said safety deposit box. I immediately went over to the First National Bank and in the presence of the proper officials of said Bank opened said safety deposit box and found that the bonds were missing. That I did not know anything about the removal of said bonds nor did I consent or agree that said bonds should be removed from said safety deposit box. That the first notice that I had of their removal from said box was when Edgar Mann advised me of their removal. That I did not authorize any one else to remove the same; that I was present at the time that said bonds were placed in said safety deposit box and same were deposited in said safety deposit box in accordance with the terms of said letter which is hereto attached.

"WITNESS MY HAND this the 24th day of August, A. D. 1934.
CHARLES I. FRANCIS."

After the compromise agreement was made and the bonds were purchased, Mrs. Brevoort and Francis entered into the following written contract with the First National Bank of Wichita Falls with respect to the renting of the safety deposit box in the bank:

"CONTRACT. Box No. 804
Date February 13, 1931
"Renter Mrs. Keturah Brevoort, Executrix. Address 1608 Polk
"Authorized Deputy Chas. I. Francis. Rate $3.00 per year
MUST HAVE BOTH SIGS., ON SLIP.

"The undersigned hereby acknowledges receipt of two (2) keys and agree to pay rental in advance for the above numbered box at above rate and hereby agrees that such rental shall be upon and subject to the agreements, conditions and regulations printed on the back of this contract, which are hereby made a part hereof, a copy of which is also shown on back of rental receipt.

"The parties named above are the only ones authorized to have access to said box. Future payments of Rental constitute a renewal of this contract. I or we agree to above.
Telephone numbers
Renter _____ Signature Mrs. Keturah Brevoort ( ) Keys
Deputy _____ Executrix
Signature Chas. I. Francis ( ) Keys"

On May 13, 1932, Mrs. Brevoort, without the knowledge or consent of Charles I. Francis or R. V. Fite, guardian, was given access to the safety deposit box by the bank. She signed at the time an admission slip provided by the bank for the purpose. Without the knowledge of the bank, she took the bonds from the box and converted same to her own use. None of the installment payments provided in the compromise agreement have ever been made by her except the installments of $150 each which fell due February 15, 1931, and June 15, 1931, respectively. These two installments were paid as they fell due. The market value of the bonds, at the time they were taken from the box by Mrs. Brevoort and converted to her own use, was $1050. The rental for said safety deposit box was paid by Mrs. Brevoort from the funds involved in said compromise agreement. There is no evidence to show that the bank, until long after Mrs. Brevoort had taken said bonds from the safety deposit box as stated, had any notice or knowledge of any of the matters related above, save such as appear from the face of the rental contract set out and the admission slip signed by Mrs. Brevoort on May 13, 1932. It seems to be conceded by all parties that at the time the rental contract was made, the bank furnished Mrs. Brevoort and Francis each with a key to the box, but neither of these keys would open the box without the cooperation of a master key held by the bank.

1  The bank contends that the rental contract hereinabove set out shows on its face that Mrs. Brevoort was the renter of the box and that Francis was merely her "Authorized Deputy" with authority to enter the box with her consent. We do not so construe the contract. A copy of the contract, as made by filling in blank lines of a printed form, appears in the statement of facts. Following the word "Renter" at the head of the printed form the term "Mrs. Keturah Brevoort, Executrix" is typewritten. Following the printed term "Authorized Deputy" the name of Chas. I. Francis is typewritten. In the blank space on the line upon which the name of Francis appears, and following his name, there is typewritten, in capital letters, the provision: "MUST HAVE BOTH SIGS. ON SLIP." This provision is also emphasized by underscoring. This emphasized provision reasonably discloses that Mrs. Brevoort and Francis were joint renters and that neither was to be allowed access to the contents of the box without both signing the admission slip.

2  The bank further contends that the evidence recited in our preliminary statement, even if all had been admitted as against the bank, does not show that the minors or their guardian are

privy to the rental contract concerning the safety deposit box. This contention cannot be maintained. Reverting to the compromise agreement, it is seen that one of the terms thereof is to the effect that the bonds were to be placed in a safety deposit box in the First National Bank of Wichita Falls, under the joint control of Mrs. Brevoort and Francis. In connection with the compromise agreement there arose between the minors and Francis the relation of principal and agent with respect to the carrying out of this provision for joint control of the safety deposit box. A mission of Francis, as the agent of said minors, was to restrict Mrs. Brevoort's access to the contents of the box. By clear implication, the scope of his authority embraced the making of the rental contract he did with the bank for the minors in his own name. For without such a contract being made with the bank he could not, in the very nature of the case, have effected the restriction contemplated. It is a settled rule of law that an agent may make a contract for his undisclosed principal in his own name, and that the latter may sue or be sued on the contract. Diacomis v. Wright, 34 S. W. (2d) 806; 2 Tex. Jur. 558.

**3** The argument is made that the evidence stated does not disclose that the minors had such an interest in the bonds as would justify a recovery of their market value as against the bank. The point made is that, as shown by paragraph four of the will of H. S. Brevoort, deceased, the policy of insurance was payable to Mrs. Keturah Brevoort and therefore the proceeds of the policy belonged to her. We are not concerned with the effect of the provisions of the will. The rights of the minors concerning the bonds are grounded on the compromise agreement between their guardian and Mrs. Brevoort. By virtue of said agreement, they at least acquired a lien on the bonds to secure the performance by Mrs. Brevoort of her promise to pay the sums specified in said agreement. It is argued that this cannot be so for the reason that in such case Mrs. Brevoort would have occupied the status of both pledgor and pledgee. This argument disregards the important fact that possession of the bonds was not committed to the unrestricted control of Mrs. Brevoort.

Thus far we have discussed the case as if all the evidence hereinbefore recited had been considered by the trial court as against the bank. However, as a matter of fact, the record discloses that all the testimony relating to the compromise agreement, including the testimony of Francis, was excluded by the trial court from evidence as against the bank. It is readily seen,

from the foregoing discussion of the points involved, that the excluded testimony was essential to show the liability of the bank to the minors. The Court of Civil Appeals had no authority to consider, as it evidently did, such excluded testimony as a basis for rendering judgment against the bank. The Leader v. Elder Mfg. Co., 39 S. W. (2d) 880. For this reason the judgment of that Court is erroneous. The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court, in so far as same is in favor of the guardian against Mrs. Brevoort, is affirmed; but in all other respects the judgment of the trial court is reversed and the cause remanded.

Opinion adopted by the Supreme Court May 4, 1938.

Rehearing overruled June 1, 1938.