NUMBER
13-04-135-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

FIRST NATIONAL
ACCEPTANCE COMPANY,                               Appellant,

                                                             v.

DEOLA BISHOP,                                                                                Appellee.

 

 

                    On appeal from the 357th District
Court

                                       of
Cameron County, Texas.

 

 

 

         O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Yanez

 

Opinion by Chief
Justice Valdez

Appellant, First National Acceptance Company (FNAC),
appeals from the judgment of the district court granting a declaratory judgment
and permanent injunction in favor of appellee, Deola Bishop, and enjoining FNAC
from conducting a foreclosure sale of certain property in Cameron County,
Texas.  FNAC argues that (1) the trial
court erred in declaring that appellant does not possess holder-in-due-course
status, (2) FNAC did not have an agency relationship with American Notice
Investments, Inc. (ANI), and (3) Bishop should not have been granted attorneys= fees pursuant to the Declaratory Judgment Act.  We affirm.

Background

Bishop owned a home and property in Cameron County,
Texas, which she sold to Cristobol and Juana Elisa Gonzalez in 1998 through a
warranty deed with vendor=s lien.  The
Gonzalezes executed a note in the principal amount of $76,500.00 payable to
Bishop, accompanied by a deed of trust securing the property, and made regular
payments to Bishop on the note.

Bishop held the note and deed of trust until January
2000, at which point she responded to an advertisement in a local newspaper
soliciting the sale of promissory notes. 
The advertisement was placed by ANI, a corporation in the business of
buying secured promissory notes from individuals on a discounted basis.  








ANI=s principal lender was FNAC, a Michigan corporation involved in lending money to businesses to
facilitate the purchase of secured promissory notes, which FNAC itself would
then repurchase and service.  FNAC would
also use ANI to conduct in-house closings of ANI=s
purchase of secured promissory notes with FNAC-funds.  According to deposition testimony from ANI=s owner, ANI would typically contact FNAC regarding
potential promissory notes available for purchase.  If FNAC approved the purchase of the note, it
would release the funds to ANI with instructions regarding how to disburse the
funds.  ANI would then purchase the note
from the individual holder and transfer its interest in the note to FNAC.  FNAC would begin to service the note and
collect payments directly from the individual debtors, although ANI would be
notified if the note went into default. 
ANI was obligated to follow FNAC=s instructions regarding the purchase of notes
exactly.  Neither ANI nor FNAC would
disclose their relationship to individual note holders seeking to sell their
notes to ANI.  

When Bishop responded to ANI=s newspaper advertisement, ANI allegedly sent FNAC
information about the note and the property, including a broker worksheet and
appraisal.  After receiving approval, ANI
sent FNAC the original note, the deed of trust, and note endorsement.  FNAC responded with a Afunding memo,@ by which ANI was instructed to conduct the closing
for the Bishop property and then, once all FNAC=s
requirements were met, to disburse the sale funds to Bishop.    

ANI failed to disburse any funds to Bishop.  Bishop attempted to cancel her agreement and
demanded the return of her documents. 
ANI failed to return the note, deed of trust, and note endorsement to
Bishop, having already transferred these to FNAC.  ANI then ceased doing business.  FNAC also failed to disburse any funds to
Bishop and refused to return the note, deed of trust, and note endorsement.  








Shortly thereafter, FNAC=s legal counsel notified the Gonzalezes that FNAC
had purchased their note and deed of trust and was therefore entitled Ato collect in full upon the Note, even if Bishop was
not paid by [ANI] for her assignment based on the assignment executed by
Bishop.  Bishop assumed the risk of
non-payment when she assigned the Note and Deed without requiring simultaneous
payment.@  FNAC then
threatened to go forward with possible foreclosure proceedings against the
Gonzalezes.

Bishop and the Gonzalezes filed suit against ANI and
FNAC seeking declaratory relief and a permanent injunction enjoining FNAC from
conducting a foreclosure sale on the property. 
The declaratory judgment action sought a judgment declaring that (1)
Bishop is the lawful owner of the note secured by the deed of trust, (2)
neither ANI nor FNAC have an interest in the note due to a failure of
consideration, and (3) the transfer of the lien from Bishop is null and void.   Bishop also sought an award of courts costs
and reasonable and necessary attorneys= fees.   ANI
settled its dispute before trial and did not appear.  

After a hearing, the court ruled in favor of Bishop,
declaring that ABishop is the lawful owner of, and entitled to
possession of@ the note; Aneither [ANI] or FNAC have an interest in the note
and the Bishop sale documents;@ and Athe transfer of liens by [ANI] or FNAC are null and
void.@  The court
ordered FNAC to pay Bishop=s attorneys= fees, and also ordered the Gonzalezes to pay to
Bishop all mortgage payments owed on the note. 
FNAC filed its appeal to this Court.

Agency








FNAC argues that because ANI and FNAC enjoyed independent
contractual relationships, the court could not impute that an agency
relationship existed between them sufficient to defeat FNAC=s holder-in-due-course status for the Bishop note.[1]   The trial court held as a conclusion of law
that ANI Awas the agent of FNAC for the closing of the Bishop
Sales Agreement,@ and therefore Aall knowledge of [ANI] regarding the closing of the
Bishop Sales Agreement, as agent for FNAC . . ., is imputed to FNAC . . .
[including] notice of the failure of [ANI] to pay the Consideration to Bishop.@  We review
the trial court's conclusions of law de novo. 
See Dominguez v. Castaneda, 163 S.W.3d 318, 325 (Tex. App.BEl Paso 2005, pet. denied). 

The question of whether a principal‑agent
relationship exists under established facts is a question of law for the
court.  Ross v. Tex. One P=ship,
796 S.W.2d 206, 210 (Tex. App.BDallas 1990, writ denied).  An agent is one who consents to the control
of another, the principal, where the principal manifests consent that the agent
shall act for the principal.  See
Royal Mortgage Corp. v. Montague, 41 S.W.3d 721, 732 (Tex. App.BFort Worth 2001, no pet).  A principal-agent relationship is not
presumed, and the party asserting  the
relationship has the burden of proving it. 
Id.  The party claiming
agency must prove the principal has both the right to assign the agent's task
and the right to control the means and details by which the agent will
accomplish the task.  Lyons v. Lindsey
Morden Claims Mgmt., Inc., 985 S.W.2d 86, 90 (Tex. App.BEl Paso 1998, no pet.).  The principal's extent of control over the
details of accomplishing the assigned task primarily distinguishes the status
of agent from that of independent contractor. 
Id.  The right of control
is "the supreme test" in establishing an agency relationship.  See State Farm Mut. Auto. Ins. Co. v.
Traver, 980 S.W.2d 625, 628 (Tex. 1998) (citing Newspapers, Inc. v. Love,
380 S.W.2d 582, 588, 590, 598 (Tex. 1964)).         








An agent need not disclose his or her principal's
identity in order to act on behalf of that principal.  Latch v. Gratty, Inc., 107 S.W.3d 543,
546 (Tex. 2003).  An agent may make a
contract for an undisclosed principal in his own name, and the latter may sue
or be sued on the contract.  Id.
(citing First Nat'l Bank of Wichita Falls v. Fite, 115 S.W.2d 1105, 1109‑10
(Tex. 1938); Restatement (second) of
Agency ' 186 cmt. c). 









Having reviewed the arguments and authorities
presented by both parties, as well as the documents and testimony regarding the
relationship between ANI and FNAC in the context of the sale of the Bishop
note, we agree with Bishop that the trial court was presented with sufficient
evidence to conclude that ANI acted as an agent for its principal, FNAC, for
the closing of the Bishop sale.  Bishop
met her burden of proof to establish that ANI, over an extended period of time,
repeatedly closed sale agreements funded by FNAC, as an Ainside@ closing under strict written instructions from
FNAC.[2]  For these Ainside@ closings, ANI prepared the transaction documents
and conducted the closing as the sole representative of FNAC.  This Ainside@ closing of sales agreements by ANI for FNAC was
outside of and apart from the specific and limited requirements and duties
imposed by the ANI-FNAC loan agreement. 
FNAC accepted the benefit of the ANI-conducted Ainside@ closings, repeatedly referred to ANI as its Abroker,@ and took possession of the note before funding the
transaction.   This demonstrates that
FNAC had both the right to assign ANI=s task and the right to control the means and
details by which ANI accomplished the task of acquiring and purchasing
promissory notes.  See Lyons, 985
S.W.2d at 90.  Accordingly, we conclude
the trial court did not err by declaring ANI an agent of FNAC in the context of
the Bishop note sale.

The protections bestowed on those who qualify for
holder-in-due-course status are intended to safeguard innocent holders who
acquire a note without prior knowledge of any problems or defenses.  See Tex.
Bus. & Com. Code Ann. ' 3.302
(Vernon 2002); Tex. State Bank v. Sharp, 506 S.W.2d 761, 763 (Tex. Civ.
App.BAustin 1974, writ ref=d
n.r.e.).  Thus, because FNAC knew that
Bishop, once she was not paid, had cancelled the sale of her note and demanded
its return from ANI, and because ANI was acting as an agent of FNAC in this
sale, FNAC cannot be considered a holder in due course and thus exempt from
Bishop=s claims.  See
Polland & Cook v. Lehmann, 832 S.W.2d 729, 738 (Tex. App.BHouston [1st Dist.] 1992, writ denied) (imputing
knowledge of agent to principal).  

Bishop urges this Court to adopt the reasoning of
the New Jersey Supreme Court, which held the following in Unico v. Owen,
232 A.2d 405, 410, 417 (N.J. 1967):

The basic philosophy of the holder in due course
status is to encourage free negotiability of commercial paper by removing
certain anxieties of one who takes the paper as an innocent purchaser knowing
no reason why the paper is not as sound as its face would indicate. It would
seem to follow, therefore, that the more the holder knows about the underlying
transaction, and particularly the more he controls or participates or
becomes involved in it, the less he fits the role of a good faith purchaser for
value; the closer his relationship to the underlying agreement which is the
source of the note, the less need there is for giving him the tension‑free
rights considered necessary in a fast‑moving, credit‑extending
commercial world.

. . . . 

 








[W]hen it appears from the totality of the
arrangements between dealer and financier that the financier has had a
substantial voice in setting standards for the underlying transaction, or
has approved the standards established by the dealer, and has agreed to take
all or a predetermined or substantial quantity of the negotiable paper which is
backed by such standards, the financier should be considered a participant in
the original transaction and therefore not entitled to holder in due course
status.

 

See id.
(emphasis added); see also Citicorp of North Am. v. Lifestyle Communications
Corp., 836 F. Supp. 644, 659 (S.D. Iowa 1993) (applying the Unico
reasoning); Block v. Ford Motor Credit Co., 286 A.2d 228, 233 (D.C. Cir.
1972) (same).  While we decline to
generally adopt Unico=s Aclose connectedness@
doctrine, we nonetheless agree that the reasoning underlying the conclusion
reached in Unico is also applicable to the circumstances here.   FNAC indeed had a Asubstantial voice@ in
setting the standards for the ANI purchase of Bishop=s note and should be considered an active and aware
participant in that transaction, not entitled to holder-in-due-course
status.   See Unico, 232 A.2d at
417.   

FNAC=s first and second issues are overruled. 

Attorneys=
Fees

By its third issue, FNAC argues that the trial court
erred when it awarded Bishop $58,623.56 in attorneys= fees.








Section 37.009 of the civil practice and remedies
code explicitly states that the trial judge may award reasonable and necessary
attorneys= fees as are equitable and just for any proceeding
brought under the Texas Uniform Declaratory Judgments Act.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997); Bocquet v. Herring,
972 S.W.2d 19, 20 (Tex. 1998).  Thus, the
award of attorneys= fees in a declaratory judgment action is entrusted
to the discretion of the trial court.  See Bocquet, 972 S.W.2d at 20.   However, the declaratory judgments act
imposes four limitations upon the court's discretion.  See  Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009; Columbia Rio Grande Reg'l Hosp. v.
Stover, 17 S.W.3d 387, 397 (Tex. App.BCorpus Christi 2000, no pet.) (citing Bocquet,
972 S.W.2d at 21; Welder v. Green, 985 S.W.2d 170, 180 (Tex. App.BCorpus Christi 1998, pet. denied)). The attorneys= fees must be reasonable, necessary, equitable, and
just.  Stover, 17 S.W.3d at 397.  Additionally, there must be supporting
evidence in order to sustain a verdict of an award of attorneys= fees.  See
Bocquet, 972 S.W.2d at 20 (citing Beaumont Bank v. Buller,
806 S.W.2d 223, 226 (Tex. 1991)).[3]            

In this case, because Bishop prevailed in her motion
for declaratory judgment, which we have affirmed, the trial court acted within
its discretion in granting attorneys= fees.  See
Bocquet, 972 S.W.2d at 20.  Bishop
submitted three separate affidavits for fees; attorneys Hervey P. Levin, David
L. Rusnak, and Gustavo Garza each submitted an affidavit detailing their
respective claims for payment.    The
trial court=s amended final judgment reflects that it Aexamined the file and the supporting affidavits of
counsel for Bishop, took judicial notice of the usual and customary attorney
fees, and determined reasonable and necessary attorney fees to be $58,623.56.@  








FNAC attacks the amount of fees awarded, arguing
specifically that the Levin affidavit, which attached billing invoices, lacked
evidence of any fees or costs accruing beyond March 25, 2003.  However, we note that the trial itself took
place in May 2003, and primary counsel for Bishop at the trial was Levin;
clearly, then, Levin undertook efforts on behalf of his client after March 25,
2003 and thus could have accrued fees beyond what had been invoiced by
March.  FNAC also complains that there is
no evidence of what attorneys= fees would be considered Areasonable and necessary.@  However, Athe court is free to take judicial notice of the
usual and customary attorney's fees for the services provided.@  Purvis
Oil Corp. v. Hillin, 890 S.W.2d 931, 939 (Tex. App.BEl Paso 1994, no writ); see also Holsworth v.
Czeschin, 632 S.W.2d 643, 645 (Tex. App.BCorpus
Christi 1982, no writ) (Awe may presume that the trial court, in support of
its judgment, did take judicial notice of the usual and customary fees for the
legal services performed by appellee's attorney@).

We conclude that FNAC failed to provide any evidence
demonstrating that the trial court abused its discretion by awarding attorneys= fees as requested by Bishop.  See Bocquet, 972 S.W.2d at 20.  We accordingly overrule FNAC=s third issue on appeal.

Conclusion

The judgment of the trial court is affirmed.

 

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

                                                                             

 

Opinion delivered and
filed

this 9th day of
February, 2006.











[1]FNAC separates this argument into
two issues on appeal, i.e., (1) the trial court erred by refusing to declare
FNAC a holder in due course, and (2) there was no imputed agency relationship
between ANI and FNAC.  Because a
conclusion that there was an imputed agency relationship between ANI and FNAC
would preclude FNAC from being considered a holder in due course, due to the
lack of consideration received by Bishop for her note, we combine these issues
and consider them together.  See
Polland & Cook v. Lehmann, 832 S.W.2d 729, 738 (Tex. App.BHouston [1st Dist.] 1992, writ
denied) (imputing knowledge of agent to principal).  





[2]According to testimony from the
owner of ANI, an Ainside@ closing involves the closing of a
sale of a negotiable instrument without the use of an independent escrow agent;
instead, the purchaser who is being funded handles all escrow duties until the
transaction is complete and the instrument is transferred to the funding party. 





[3]Factors the trial court should
consider when determining the reasonableness of attorneys= fees include (1) the time and
labor required, the novelty and difficulty of the questions involved, and the
skill required to perform the legal service properly; (2) the likelihood that
the acceptance of the particular employment will preclude other employment; (3)
the fee customarily charged in the locality for similar legal services; (4) the
amount involved and the results obtained; (5) the time limitations imposed by
the client or by the circumstances; (6) the nature and length of the
professional relationship with the client; (7) the experience, reputation, and
ability of the lawyer or lawyers performing the services; and (8) whether the
fee is fixed or contingent on results obtained or uncertainty of collection
before the legal services have been rendered. 
Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999).