

# NUMBER 13-08-00127-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**REVEILLE TRUCKING, INC.,** **Appellant,**

**v.**

**LOERA CUSTOMS BROKERAGE, INC.,** **Appellee.**

---

### On appeal from the 197th District Court
### of Cameron County, Texas.

---

### MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Wittig[1]
### Memorandum Opinion by Justice Don Wittig

This is a bailment case that addresses the application of proportionate responsibility

and attorney's fees to a bailment contract. Appellant, Reveille Trucking, Inc. ("Reveille"),

presents four issues. It claims the trial court erred by amending the judgment, applying the

---

[1] Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

doctrine of proportionate responsibility, and that damages and attorney's fees are recoverable under bailment for breach of contract. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Reveille had a long-term business relationship with Loera Customs Brokerage, Inc. ("Loera"), appellee. Reveille delivered loaded trailers to Loera, who would perform customs services. Loera then would facilitate delivery of the loaded trailers to Mexico, and the empty trailers were then returned to Loera's facility. Four of Reveille's trailers were discovered missing after Reveille had delivered them to Loera. Three of the trailers had definitely been returned to Loera after their initial trip into Mexico. Loera allowed Olson International, a different entity, to reuse these trailers without permission of Reveille. Apparently, these trailers were not re-delivered to Loera, but were, in any event, missing. The proof concerning the fourth trailer indicated it was initially delivered to Loera by Reveille, but whether or not it was ever re-delivered to Loera after its use was in question.

Reveille brought suit against Loera under a bailment theory, including both negligence and contract theories. The jury found in favor of Reveille and against Loera on the issues. Under the court's charge, bailment was defined as follows:

> **"Bailment"** means: (1) the delivery of personal property from one person to another for a specific purpose; (2) acceptance by transferee of the delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that the property will be returned to transferor.

(Emphasis in original). Question one of the court's charge asked: "Did a bailment exist between Reveille and Loera which required Loera to be responsible for the safekeeping of the returned empty trailers until they were to be picked up by Reveille?" The jury

2

answered: "Yes."[2] Question two inquired whether the bailment was for the sole benefit of Reveille. The jury answered: "No." Question three inquired whether Loera failed to comply with the bailment agreement. The jury answered "Yes."

Question four, conditioned upon a "Yes" answer to question three (that Loera failed to comply with the bailment agreement), asked whose negligence proximately caused the occurrence in question. The jury answered "yes" to Reveille, Loera, and Olson, and in the next question apportioned the negligence 20 percent to Reveille, 40 percent to Loera and 40 percent to Olson. In the final question submitted to the jury, the jury found $36,000 in damages. On appeal, Reveille theorizes that the fourth trailer, with a value of $8,000, was subtracted from the damages it sought of $42,000. This is consistent with the proof that three trailers were initially returned to Loera from Mexico, but the fourth trailer may not have been returned. The parties stipulated to the amount of attorney's fees of $29,890.52. Judgment was first entered in favor of Reveille and against Loera for $36,000, plus the stipulated amount of attorney's fees.

Loera subsequently filed a motion to modify, correct, or reform the judgment. This motion was based solely upon the "doctrine of proportionate responsibility." In the motion, Loera argued to the trial court that Olson was designated as a responsible third party and accordingly, the damages should be reduced by the negligence of both Olson and Reveille. This was error, according to Reveille, because Reveille elected to recover under contract, which was correctly reflected in the original judgment signed by the trial court and which also provided for attorney's fees. As we indicated, the original judgment

---

[2] Throughout its brief, Loera argues to the contrary of this "Yes" answer yet fails to directly address the finding except in its later "no evidence" issue.

awarded damages of $36,000, plus the stipulated attorney's fees.

## II. BAILMENT

In its first three issues, Reveille argues that the bailment case was submitted under both a contract and negligence claim. Accordingly, the trial court erred by granting Loera's motion to amend and by not allowing recovery for breach of the bailment contract. Loera provided not only custom brokerage services on the freight, but also loading, unloading, and warehousing services. According to Loera, "this is what happened." Other brokers do not have a warehouse and yard, and therefore do not provide these additional services.

Reveille was transporting products for New Process Steel for ultimate delivery to Olson at its maquiladora in Mexico. Reveille had done business with Loera for many years, since approximately 1997 or 1998. Reveille had no contract with Olson. Reveille claimed an oral agreement, an implied agreement, and a longstanding working relationship with Loera. Loera claimed its only contract was with Olson.

Reveille delivered its trailers with products to Loera, who would sign Reveille's bill of lading. Both the trailers and products were left with Loera. Loera would then complete the customs paperwork and Olson would pick up the trailers, transport the cargo to Mexico, and return the empty trailers to Loera. One side of Loera's lot had loaded trailers for pickup and the other side, separated by a fence, housed the returned empty trailers. Reveille dropped off and picked up two to four trailers each day. The empty trailers were then returned to Reveille's lot in Harlingen. This process continued for many years.

Reveille employee, Juan Leal, testified that Reveille had an agreement (oral) to

4

drop the trailers in Loera's yard.  Loera accepted the delivery of the trailers by signing the applicable bills of lading.  Loera performed its services both for customs brokerage  and to facilitate the transportation of the cargo to Mexico.   Juan Leal further testified:

Q:      Were the trailers supposed to be returned to Loera's place of business?

A:      Yes sir.

Q:      And were they to remain parked there until Reveille could go and retrieve their trailer?

Q:      Yes, sir.

Loera was not supposed to reuse Reveille's trailers on its own without Reveille's knowledge.  If Loera ran out of space, it called Reveille to come pick up the trailers.  Four trailers were lost or missing over several months beginning in late 2002 and into early 2003.

According to the paperwork and testimony,  three of the four missing trailers were returned from Mexico to Loera's yard.  Loera then allowed the trailers to be re-used for a second trip into Mexico without Reveille's knowledge or consent.  These trailers were lost or missing and formed the basis of Reveille's claims.

## A. STANDARD OF REVIEW

Claims for breaches of bailment agreements generally can be brought as contract or tort claims depending on the particular facts of the case and the type of action the plaintiff chooses to assert.  *Barker v. Eckman*, 213 S.W.3d 306, 310 (Tex. 2006).  The rights and obligations of the parties to a bailment agreement must be analyzed in light of the particular facts and the claims asserted.  *Id.* at 311.  We review *de novo* the issue of applying the proportionate responsibility statue, a question of law, because it  involves

5

application of well-established rules of statutory construction. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008); *see also State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Boenig v. StarnAir, Inc.*, 283 S.W.3d 444, 446 (Tex. App.–Fort Worth 2009, no pet. ) (statutory construction is a question of law, and our review is accordingly *de novo*).

## B. ANALYSIS

Loera argues that the determination of the type of damages arising from a bailment relationship is established by a review of the facts, pleadings and relationships of the parties. It cites *Trammell v. Whitlock*, 242 S.W.2d 157, 159 (Tex. 1951). *Trammell* holds:

> In so far as the verdict states a "special contract" of the bailee to be responsible for any and all damage, there is no evidence to support it. The liability of the defendant-petitioner accordingly must rest on his failure to exercise reasonable care for the bailed article, as in the usual care of a bailment for mutual benefit. If, assuming the fact of bailment, the evidence still presented a fact question of negligence, then the mere finding of a bailment would not support a judgment for the plaintiff bailor; but if, on the same assumption, the record compelled the conclusion of negligence, judgment should have been rendered in the trial court for the plaintiff-respondent, instead of the petitioner bailee, and the rendition of such judgment by the Court of Civil Appeals was proper.

*Id.* However, *Trammell* is inapplicable because the court therein clearly concludes there was no evidence to support a finding that there was a contract that, in effect, made Whitlock an insurer. *Id.* Reveille did not plead or submit an issue like *Trammell* that would make Loera an insurer. And significantly, in the present case, there is evidence of a contract. In *Trammell*, the supreme court also found error by the trial court in granting a judgment notwithstanding the verdict because Trammell established a bailment based upon negligence, even though negligence was not submitted to the jury.

6

*Id.* at 160.

Loera goes on to argue that the testimony of the parties underscores the fact that Reveille's claim could not be based in contract because there was no such oral agreement.   It cites *Prime Prods. v. S.S.I. Plastics*, 97 S.W.3d 631, 635 (Tex. App.–Houston [1st Dist.] 2002, pet. denied).   "In a bailment for the mutual benefit of the parties, and in the absence of a special contract, the bailee is held to an ordinary or reasonable degree of care." *Id.* (citing *Trammell*, 242 S.W.2d at 159).   In *Prime*, no evidence was presented "to raise a fact issue that SSI enlarged its liability by agreement to be responsible for the bill of lading, or inspecting and securing the mold, or closing the door of Con-Way's truck." *Id.* at 636.   "A bailee for hire is not made an insurer by implication; there must be clear and explicit contractual language to show that the bailee assumed an obligation to pay the bailor for damages not caused by the bailee's negligence." *Id*.   While Prime showed presumptive negligence by SSI,  SSI then provided undisputed evidence that the property in question was damaged by Con-Way's failure both to secure the mold in its truck and to close the truck door. *Id.*  "There was no evidence of negligence in SSI's transfer of the mold to Conway." *Id.*

Here, the jury found Loera failed to perform the bailment agreement, which called for its safekeeping of the returned empty trailers until they were picked up by Reveille.

Reveille responds that it did not and does not argue for some absolute insurance for the trailers, but rather that the trailers were held by Loera to be returned to Reveille and were not to be re-used without its permission.  Herein lies the central factual dispute of this case.  Reveille put on evidence that there was an oral agreement that Loera would hold and return Reveille's trailers.  Loera took the position it had no oral agreement with

7

Reveille, and that its only agreements were with Olson. Contrary to this argument, the jury found there was a bailment between Reveille and Loera, that the bailment was not for the sole benefit of Reveille, and that Loera failed to comply with the agreement. Thus, the jury rejected Loera's position, and its supporting testimony to the contrary, by its answers to questions one through three.

Both parties cite *McKenzie Equipment Co. v. Hess Oil & Chemical Corp.*, 451 S.W.2d 230 (Tex. 1970). Loera relies on the following language therein: "The common law liability of a bailee to a bailor for loss or damage to the bailed property is limited to the consequence of the bailee's fault or negligence. This liability may be enlarged to place a greater risk upon the bailee by agreement of the parties." *Id.* at 230. The supreme court held that because the written lease language provided for full responsibility and liability on the bailee, the bailee had liability: "The parties did contemplate such losses and agreed at the outset of their contract that 'full responsibility and liability' would fall upon the lessee." *Id.* at 231. Loera points out that *McKenzie* recites: "It is true that the courts have usually construed a promise by the bailee to return the property in as good condition as when received as not enlarging the common law liability. . . ." *Id.* However, the bailment contract in this case, as found by the jury, was for the return of Reveille's trailers with no contemplation of the reuse of the trailers without permission. *See DeLaney v. Assured Self Storage*, 272 S.W.3d 837, 839 (Tex. App.–Dallas 2008, no pet.) (citing *Berlow v. Sheraton Dallas Corp.*, 629 S.W.2d 818, 821 (Tex. App.--Dallas 1982, writ ref'd n.r.e.) ("In order to constitute a bailment, there must be a contract, express or implied, delivery of the property to the bailee, and acceptance of the property by the bailee.")).

8

Loera next cites *Barnett-Miron Enterprises, Inc. v. Roneal Martin, Inc.*, 742 S.W.2d 530, 532 (Tex. App.–Fort Worth 1987, no pet.). There, the jury found the bailee failed to act in a reasonably prudent manner, but such failure was not the proximate cause of the loss to the appellee of its skis. *Id.* The bailee perhaps erred in either delivering the skis to a third party or allowing the third party to have possession of them; however, the proximate cause of the loss of the skis was a fire, not caused by the fault of the third party or the bailee. *Id.* "It was an 'explained' fire. That being true, the presumption of loss due to fault on the part of the bailee is overcome." *Id.*

This third party fire loss case is not on point. Here the jury found both Loera and Olson 40 percent negligent. Therefore, negligent fault and causation were found against Loera. But the negligence finding is not necessarily material to the contract claim. More to the point, the jury found a bailment agreement between Reveille and Loera, and that Loera failed to comply with the agreement.

Loera heavily emphasizes the relationships and dealings between Olson and Loera, Reveille and New Process Steel, and New Process Steel and Olson. It argues that Olson had full control of the movement of Reveille's trailers. Yet, the record reflects Loera signed off for receipt of the trailers by signing Reveille's bill of lading. Loera all but ignores its central role as a customs broker and agent dealing both with Reveille and Olson. And Loera's argument ignores the very basis of Reveille's claim, that Reveille agreed to drop off its trailers to Loera, which performed customs work and arranged for Olson to pick up and re-deliver the trailers to Loera within seventy-two hours. Indeed the jury found Olson 40 percent negligent. But Reveille did not claim any contract or other damages against Olson. The only breach of contract claim was by Reveille against

9

Loera.

Loera acknowledges that claims for breaches of bailment agreements generally can be brought as contract or tort claims, depending on the particular facts of the case and the type of action the plaintiff chooses to assert; *See Barker,* 213 S.W.3d at 310. Here, Reveille pled both negligence and contract. Loera argues that Reveille's claims against Loera sounded in tort, not contract. Its basis for this argument is that there was in fact, no express, implied or oral contract agreement. Nevertheless, the jury found otherwise and the record supports the findings.

Loera argues Olson, and not Loera, caused the loss of the trailers. However, the existence of a bailor/bailee relationship is not determined by the circumstances that bring about the damage or loss. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 463 (Tex. App.–Dallas 2006, pet. denied). Rather, we consider the traditional elements of a bailment. *Id.* We have already discussed testimony supportive of an oral agreement by Loera with Reveille. The foundation of a bailment lies in contract. *Sanroc Co. International v. Roadrunner Transp., Inc.*, 596 S.W.2d 320, 322 (Tex. Civ. App.–Houston [1st Dist.] 1980, no writ). "The agreement of the parties may be expressed, implied, or quasi and constructive, and is governed by the rules which apply to other contracts." *Id.* (citing *Adair v. Roberts*, 276 S.W.2d 565 (Tex. Civ. App.–Texarkana 1955, no writ)). An agent may make a contract for his undisclosed principal and that principal may sue on the contract. *Id.* (citing *First National Bank of Wichita Falls v. Fite*, 115 S.W.2d 1105 (1938)). A contract of bailment may arise by implication of law, if through the proof of sufficient circumstances the implied relationship of bailor and bailee is shown to rest upon a substantive foundation. *Id.* Acceptance of

10

the property and of the responsibilities accompanying the relationship may be proved directly or by circumstances. *Id.*

Even if we were to accept Loera's argument that there was no express oral contract, it defies common sense and everyday business practice to unilaterally drop off a trailer loaded with over 40,000 pounds of steel, in a stranger's yard, near the border, without an implied or constructive arrangement that Loera would accept the delivery for the purpose of further transfer, and then accept back the same Reveille trailer upon its return by Olson. This arrangement spanned at least six years.

Reveille argues, and we agree, that when a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). The rules of civil procedure also mandate that a judgment be framed to give the party all the relief to which he may be entitled. TEX. R. CIV. P. 301.

Loera moved the trial court to modify the judgment on the basis of Chapter 33 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.002 (Vernon 2008). In granting Loera's motion, the trial court erroneously applied this law. Reduction in damages under comparative negligence is applicable to negligence actions only and not to recoveries for breach of contract. *Sassen v. Tanglegrove Townhouse Condominium Ass'n*, 877 S.W.2d 489, 493 (Tex. App.–Texarkana 1994, writ denied); *see also JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 702 (Tex. 2008) (providing that Chapter 33 of the Texas Civil Practice and Remedies Code apportions responsibility among those responsible for damages in "any cause of action based on tort"). Furthermore, bailment

11

is a contract action, therefore attorney's fees are recoverable. *Allright, Inc. v. Guy*, 696 S.W.2d 603, 605 (Tex. App.–Houston [14TH Dist.] 1985, no writ).

### III. Presentment of Attorney's Fees

Responding to Reveille's fourth issue regarding its entitlement to attorney's fees, Loera argues that Reveille is not entitled to attorney's fees because a proper presentment for fees was not made to Loera. It cites Texas Civil Practice and Remedies Code section 38.002 and *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981) (providing that a necessary requisite for the recovery of attorney's fees is the presentment of the contract claim to the opposing party and the failure of that party to tender performance; the statute is to "be liberally construed to promote its underlying purposes"). Loera also cites *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983), holding that in order to recover attorney's fees in a suit "founded on" a written contract under this article, a plaintiff must plead and prove that presentment of a contract claim was made to the opposing party and that the party failed to tender performance. *See id. Ellis* more narrowly holds that an essential element to recovery of attorney's fees under Chapter 38 in a suit based on contract is "the existence of a duty or obligation which the opposing party has failed to meet." *See Brainard v. Trinity Univ. Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006).

Reveille counters that Loera made no objection to the trial court when evidence of attorney's fees was offered. We agree. Rule 33.1 of the Texas Rules of Appellate Procedure, entitled "Preservation of Appellate Complaints," requires, as a prerequisite for presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion that the stated the grounds for the ruling that the complaining party sought from the trial court with

12

sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a).

Loera is further burdened with its own stipulation concerning attorney's fees. Before resting, Reveille's attorney offered into evidence, without objection--actually by agreement--a stipulated sum of attorney's fees in the amount of $29,890.52. A stipulation is an agreement, admission, or other concession made in a judicial proceeding by the parties or their attorneys. *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 311 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (citing *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 821 (Tex. App.–Houston [1st Dist.] 1999, pet. denied)). It constitutes a binding contract between the parties, may be used to limit or exclude the issues to be tried, and even obviates the need for proof on the litigable issue. *Id.* "In construing a stipulation, a court must determine the intent of the parties from the language used in the entire agreement, examining the surrounding circumstances, including the state of the pleadings, the allegations made therein, and the attitude of the parties with respect to the issue." *Id.* (citations omitted.)

In context, Reveille's counsel indicated that the testimony concerning attorney's fees would indicate a value of $29,890.52. Counsel for Loera announced: "So stipulated, your Honor." No restrictions on the use of the stipulation or offer of proof of attorney's fees was made by either party. The stipulation was received without reservation or any objections, thus obviating the need for further proof on the issue of attorney's fees. *Id.; see Sunbelt Constr. Corp. v. S & D Mechanical Contractors, Inc.*, 668 S.W.2d 415, 418 (Tex. App.–Corpus Christi 1983, writ ref'd n.r.e.) (an affidavit filed by the movant's attorney setting forth his opinion regarding reasonable attorney's fees

13

is sufficient when uncontroverted).  Thus, Loera has not preserved any error as to this argument.

## IV. No Evidence

By cross-point, Loera contends there was no evidence that it made an agreement with Reveille for the safe return of the trailers and therefore, there cannot be a finding of bailment as a matter of law.

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows:  (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact.  *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).  In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the appealed order and indulge every reasonable inference that supports it.  *Id.* at 821-22; *Harris County v. Vernagallo*, 181 S.W.3d 17, 24 (Tex. App.–Houston [14th Dist.] 2005, pet. denied); *Prairie View A & M Univ. v. Brooks*, 180 S.W.3d 694, 705 (Tex. App.–Houston [14th Dist.] 2005, no pet.). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review.  *Keller*, 168 S.W.3d at 827-28; *Vernagallo*, 181 S.W.3d at 24; *Brooks*, 180 S.W.3d at 705.  This court must credit favorable evidence if a reasonable trier of fact could have so found, and disregard contrary evidence unless a reasonable trier of fact could not have so found.  *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009)*; Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008); *Keller*, 168 S.W.3d at 827; *Vernagallo*, 181 S.W.3d at 24; *Brooks*, 180

14

S.W.3d at 705. The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Keller*, 168 S.W.3d at 819; *Vernagallo*, 181 S.W.3d at 24; *Brooks*, 180 S.W.3d at 705.

Juan Leal testified that Reveille had an agreement to drop trailers with Loera in Brownsville. Loera would accept delivery by signing a bill of lading. This facilitated Loera's brokerage business and customs work. The trailers were to be returned to Loera's yard and remain parked until Reveille picked them up. Loera had no authority to then reuse the trailers without the knowledge of Reveille. Loera's owner acknowledged the practice of dropping the trailers off at a special place and that the owners picked the trailers up. Loera's owner admitted that Reveille was not called to authorize the reuse of the trailers. On other occasions, Loera's employee, Carlos Macias, called for permission to reuse the trailers. Reveille was clear that its agreement with Loera called for the drop off and pick up of its trailers at Loera's facility. "Our agreement was to pick up and deliver at the same spot."

Loera's witnesses said there was no contract with Reveille. Its only material contractual dealings were with Olson, who in fact instructed Loera to reuse the Reveille trailers. Macias, Loera's employee who dealt with Reveille, had no authority to make any arrangements with Reveille. The proof was obviously conflicting. Conflicting testimony was also presented about whether Loera would contact Olson to arrange delivery and return of the trailers, or whether Olson alone directed the delivery and return of the trailers.

"To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most

15

favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Hogue*, 271 S.W.3d at 248. Here, the jury decided the disputed evidence in favor of Reveille. We conclude that more than a scintilla of evidence supports the jury's findings.

Loera concludes: "Alternatively, the existence of facts proving the lack of a bailment was so contrary to the overwhelming weight and preponderance of the evidence that there can be no conclusion other than that no bailment existed." This sentence is the full extent of the argument on this issue.[3] Without analysis, argument, or citation to evidence or authority, this argument is waived. *Clearview Props., L.P. v. Property Tex. SC One Corp.*, 287 S.W.3d 132, 142 (Tex. App.–Houston [14th Dist.] 2009, pet. filed) (citing TEX. R. APP. P. 38.1(h); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.–Houston [14th Dist.] 2005, no pet.)). We cannot review an issue on appeal when it is not supported by argument or citation to applicable legal authority. *Birnbaum v. Law Offices of G. David Westfall, P.C.*, 120 S.W.3d 470, 477 (Tex. App.–Dallas 2003, pet. denied) We overrule Loera's cross-point.

## V. CONCLUSION

We sustain Reveille's issues. We overrule Loera's cross point. We affirm the portion of the trial court's amended judgment finding liability in favor of Reveille. We reverse the trial's court application of proportionate responsibility to the bailment contract findings, and denial of attorney's fees. We remand with instructions to enter judgment in favor of Reveille and against Loera for $36,000, plus attorney's fees in the amount of $29,890.52, together with costs of court, prejudgment and post judgment interest, and

---

[3] Loera seemingly attempts to raise a factual sufficiency issue.

16

such other relief to which Reveille may be entitled.



                                                    DON WITTIG,
                                                    Justice


Delivered and filed
the 29th day of June, 2010.