Louis Randall LATCH, Petitioner,

v.

GRATTY, INC, Respondent.

No. 01–0773.

Supreme Court of Texas.

Feb. 27, 2003.

Mark D. Strachan, Eric D. Pearson, Sayles, Lidji & Webner, Dallas, for Petitioner.

Mary Kathleen Gilchrist, Glenn Phillips, Phillips & Gilchrist, LLP, Kilgore, for Respondent.

PER CURIAM.

Plaintiff corporation had a contract with another corporation to purchase its franchise and assets. Plaintiff alleges that the other corporation's president tortiously interfered with that contract by individually signing a second contract to sell the same assets to another buyer. Because there is no evidence that the president was acting solely for his personal benefit when he signed the second contract, plaintiff as a matter of law failed to show that the president was a stranger to the contract as the cause of action requires. Moreover, plaintiff's alternative claim that the president interfered with its prospective contractual relations was not preserved, so we cannot affirm the judgment on that ground. We therefore reverse the judgment of the court of appeals and render judgment that plaintiff take nothing.

On November 6, 1996, Louis Randall Latch, as president and part owner of Fun Motors of Longview, Inc., signed an Asset Purchase Agreement with Jim Gratton, president and owner of Gratty, Inc. The agreement provided that Fun Motors would sell its assets to Gratty, conditioned upon Gratty obtaining financing and securing Kawasaki's approval to operate a dealership. Latch signed the contract "Louis Randall Latch, President of Fun Motors of Longview, Inc." On March 4, 1997, the parties executed a second contract providing for owner financing.

On April 1, 1997, several weeks after the second agreement with Gratton, Latch entered into an agreement to sell the Kawasaki franchise and assets to a different buyer, Scott Zhorne, also conditioned upon Zhorne obtaining approval from Kawasaki to operate a dealership. The agreement did not mention Fun Motors by name, but rather was signed by Latch without any indication that he was anyone's agent.

Meanwhile, Kawasaki had instituted proceedings before the Texas Department of Transportation to terminate Fun Motors' Kawasaki franchise for reasons unrelated to the attempted sale, and a revocation hearing was held in January 1997. Before this action was resolved, Gratton submitted Gratty Inc.'s dealership application to Kawasaki on April 25, 1997, and Zhorne submitted his three days later. Latch nev-

er responded to Kawasaki's inquiry about which application should take precedence. Kawasaki eventually sued Fun Motors, Gratty, Inc., and Zhorne in federal district court for a judgment declaring which of the two sales was controlling. The court dismissed that action as moot, however, when the Texas Department of Transportation terminated Fun Motors' Kawasaki franchise.

After the termination, Gratty brought this suit, alleging breach of contract and violations of the Texas Deceptive Trade Practices Act against Fun Motors and tortious interference with contract against Latch. In its findings of fact, the trial court determined that Latch's conduct interfered with the Gratty–Fun Motors contract, stating that "[t]he evidence admitted established that there was a reasonable probability that Plaintiff would have consummated the purchase of the interests of Fun Motors of Longview, Inc. in the Dealer Agreement and related inventory but for the conduct of Defendant Louis Randall Latch." The court rendered judgment that Gratty take nothing against Fun Motors but awarded tort damages against Latch. The court of appeals upheld the trial court's finding of interference, holding that Latch was acting in his individual capacity when he interfered with the Fun Motors–Gratty contract by signing the contract with Zhorne. Thus, the court of appeals concluded, he was a stranger to the contract and his conduct constituted interference with the contract. 51 S.W.3d 756, 766.

■ The acts of a corporate agent on behalf of his or her principal are ordinarily deemed to be the corporation's acts. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995). To show that an agent has interfered with his or her principal's contract, the plaintiff must prove the agent acted solely "in furtherance of [his or her]

personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract." *Id.* at 796. Thus, agents are not liable for tortious interference with their principals' contracts merely because they have mixed motives to benefit both themselves and their principals. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997). Rather, the plaintiff meets his or her burden by proving the agent acted "so contrary to the corporation's interests that his or her actions could only have been motivated by personal interest." *Id.* Furthermore, an agent cannot be held to have acted against the principal's interests unless the principal has objected. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex.1998) (per curiam).

In this Court, Latch argues there is no evidence to support the trial court's finding of interference because there is no evidence either that he was acting solely for his own personal interests or that Fun Motors objected to his actions. Gratty, Inc. responds that because Latch was not acting as Fun Motors' agent when he signed the Zhorne contract, evidence that Latch acted for his own personal interests or that Fun Motors objected was not required.

■ As with a jury's finding, an appellate court will not uphold a trial court's fact finding when there is no evidence to support it. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). In conducting a no-evidence review, an appellate court must "view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). In rejecting Latch's challenge to the trial court's finding of interference, the court of appeals cited evidence that Latch (1) signed the agreement between

Fun Motors and Gratty, Inc. with a designation of his agency status, (2) signed the agreement with Zhorne without such a designation, and (3) knew how to effect a corporate act. 51 S.W.3d at 761. Taken together, the court concluded "[t]his evidence is legally sufficient to uphold the trial court's finding that Latch acted in his individual capacity when he signed the Buy/Sell agreement with Zhorne." *Id.*

▪ We disagree. The mere fact that Latch signed the agreement without indicating his agency is no evidence that he acted individually. An agent need not disclose his or her principal's identity in order to act on behalf of that principal. Rather, an agent who signs a contract on behalf of an undisclosed principal is liable on the contract. *Heinrichs v. Evins Pers. Consultants, Inc., Number One,* 486 S.W.2d 935, 937 (Tex.1972). Thus, Zhorne could sue Latch for breach of the contract. But the undisclosed principal may also be bound to the contract made if the agent, acting with authority, was intending to act on behalf of the principal. *First Nat'l Bank of Wichita Falls v. Fite,* 131 Tex. 523, 115 S.W.2d 1105, 1109–10 (1938) ("It is a settled rule of law that an agent may make a contract for an undisclosed principal in his own name, and that the latter may sue or be sued on the contract."); RESTATEMENT (SECOND) OF AGENCY § 186 cmt. c ("The principal becomes a party to the transaction only if it is proved that the agent intended to act upon his account."). Fun Motors can still be bound to the contract even though Latch signed his own name.

Because there is no evidence in the record that Latch was not acting as Fun Motors' agent, Gratty, Inc. cannot recover unless it can show Latch acted "so contrary to the corporation's interests that his or her actions could only have been motivated by personal interest." *ACS Inves-*

*tors, Inc. v. McLaughlin,* 943 S.W.2d 426, 432 (Tex.1997). The trial court did not find, and there is no evidence in the record, that Latch's actions were against the corporation's interests.

▪ Latch argues that Gratty cannot recover for another reason. Even if there were some evidence that Latch acted against the corporation's interests and for his own, under our holdings, an agent cannot be held to have acted against the principal's interests unless the principal has objected. *Powell Indus., Inc.,* 985 S.W.2d at 457. But conversely, even such a corporate complaint is not conclusive evidence that the agent was acting for his or her personal interests. *Id.* Here, Gratty produced no evidence that Fun Motors complained of Latch's conduct, and the trial court made no such finding. In conclusion, Gratty has not satisfied the requirements of either *Holloway* or *Powell.* The court of appeals' judgment on Gratty's tortious interference claim must be reversed.

▪ As an independent ground to affirm the trial court's judgment, Gratty asserts that the trial court also rendered judgment against Latch for tortiously interfering with Gratty's prospective contractual relations with Kawasaki, and it asserts that this part of the judgment has not been challenged. However, Gratty did not plead tortious interference with a prospective contract, nor was this cause of action tried by consent. A judgment must conform to the pleadings and proof. TEX.R. CIV. P. 301. Accordingly, Gratty is not entitled to a judgment on that cause of action. *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 688 (Tex.1991) (per curiam); *Stoner v. Thompson,* 578 S.W.2d 679, 682–83 (Tex. 1979).

For these reasons, we reverse the court of appeals' judgment and render judgment that Gratty take nothing.

Justice WAINWRIGHT did not participate in the decision.