**Opinion issued September 29, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00934-CV

————————————

**KRIS WILLIAM BUILDERS, INC. AND ORLANDO DELCID, Appellants**

**V.**

**TRANQUILITY LAKES OWNERS ASSOCIATION, INC., CENTRA PARTNERS L.L.C., CARDINAL STREET MANAGEMENT L.L.C., AND LINDSEY GIMBER, INDIVIDUALLY AND AS FORMER PRESIDENT OF TRANQUILITY LAKES OWNERS ASSOCIATION, INC. AND MANAGING MEMBER OF CARDINAL STREET MANAGEMENT L.L.C., Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-43428**

---

## MEMORANDUM OPINION

Kris William Builders, Inc. and Orlando Delcid appeal the trial court's

rendition of summary judgment in favor of Tranquility Lakes Owners Association

Inc., Centra Partners L.L.C., Cardinal Street Management L.L.C., and Lindsey Gimber. Appellants sued appellees for, among other things, breach of contract, tortious interference, and fraud related to the cancellation of Kris William's contract to repair the damage to Tranquility Lake Condominiums caused by Hurricane Ike. Appellees filed traditional and no-evidence motions for summary judgment on all of appellants' claims. The trial court granted summary judgment and rendered a take-nothing judgment against appellants. We affirm.

## Background

In September 2008, Hurricane Ike damaged the Tranquility Lake Condominiums. On March 3, 2009, Centra Partners L.L.C., the Owners Association's management company and its corporate representative, executed a contract on behalf of the Owners Association with Kris William in which Kris William agreed to "[a]ssess all casualty damages sustained by the Property as a result of Hurricane Ike," "[p]repare a proposed scope of work necessary to remediate the damages," and "[a]dminister and/or negotiate any applicable insurance or indemnification claims." For these services, the Owners Association agreed to pay Kris William a percentage of the gross amount of any applicable insurance or indemnification claims as the applicable insurance company paid them. The contract also provided that Kris William would be eligible to bid for the remediation contracts but would not receive any preferential consideration.

2

Orlando Delcid executed the contract on behalf of Kris William. A week and a half later, the parties executed a Contractor Agreement, in which Kris William agreed "to perform the scope of work described in the Contractor's report submitted to the Client's insurance company for the property."

On July 22, 2009, the Owners Association terminated the two contracts. Kris William and Delcid sued the Owners Association, Centra, Lindsey Gimber, the then-president of the Association, and Cardinal Street Management, LLC, the Owners Association's new management company, which was founded by Gimber. The plaintiffs alleged that the Owners Association improperly terminated the contracts after Delcid refused to comply with Gimber's demand for a kickback. They sued, among other things, for breach of contract, tortious interference, and fraud.

The defendants moved for no-evidence and traditional summary judgment on all of the plaintiffs' claims. The plaintiffs responded and moved for a continuance of the summary-judgment submission date. The trial court granted the defendants' motions for summary judgment without specifying its reasons.

## Jurisdiction

We first address appellees' contention that we lack jurisdiction over this appeal because appellants did not timely file their notice of appeal.

## A. Standard of Review and Applicable Law

We consider as a matter of law the question of whether we have jurisdiction over an appeal. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Generally, a notice of appeal is due within 30 days after the judgment is signed. *See* TEX. R. APP. P. 26.1. The deadline to file a notice of appeal is extended to 90 days after the date the judgment is signed if any party timely files a motion for new trial, motion to modify the judgment, motion to reinstate, or, under certain circumstances, a request for findings of fact and conclusions of law. *See* TEX. R. APP. P. 26.1(a); *see also* TEX. R. CIV. P. 297, 329b(a), (g).

## B. Analysis

We conclude that we have jurisdiction. The order granting appellees summary judgment, dated June 11, 2013, stated that "Judgment be issued in favor of Defendants . . . and Plaintiffs take nothing as to any of his [sic] claims against Defendants," and that it disposed of "all claims between all parties to this cause of action and is final for purposes of appeal." The order did not specifically mention Gimber and Cardinal's counterclaims, nor had any party moved for summary judgment on those claims. But two weeks later, on June 26, 2013, the trial court signed an order resetting the trial of the case to September 2013, effectively modifying the summary-judgment order to set the counterclaims for trial and rendering the summary-judgment order interlocutory. *See* TEX. R. CIV. P. 329b(d)

4

(trial court may vacate, modify, correct, or reform judgment within 30 days after judgment signed).

Gimber and Cardinal later moved to dismiss their counterclaims without prejudice, and the trial court signed an order dismissing the counterclaims on September 26, 2013. This order disposed of all remaining claims between all parties, and appellants filed their notice of appeal on October 28, 2013. We conclude that appellants' deadline to file their notice of appeal ran from September 26, 2013, the day that the trial court entered the order disposing of Gimber and Cardinal's counterclaims, and that their notice of appeal, filed on October 28, 2013, was timely filed.[1] *See In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 830 (Tex. 2005) ("A judgment that actually disposes of all parties and all claims is final, regardless of its language . . . ."). Accordingly, we have jurisdiction over this appeal. *See* TEX. R. APP. P. 25.1, 26.1.

**Motion for Continuance**

In their first issue, appellants argue that the trial court erred in denying their motion for continuance of submission of the motions for summary judgment. In response to the summary-judgment motions, appellants moved for a continuance on the grounds that they required additional depositions to respond to the

---

[1] Thirty calendar days from September 26, 2013 was October 26, 2013, a Saturday. Accordingly, the deadline to file the notice of appeal ran until Monday, October 28, 2013. *See* TEX. R. CIV. P. 4.

5

summary-judgment motions. They argued that the defendants had "dragged their feet" in producing witnesses for deposition and requested that the trial court compel the defendants to produce the witnesses for deposition.

## A.     Standard of Review and Applicable Law

We review a trial court's ruling denying a motion for continuance for an abuse of discretion. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002); *accord Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Marchand*, 83 S.W.3d at 800. The trial court may continue a summary judgment hearing if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition." TEX. R. CIV. P. 166a(g). In a first motion for continuance based on the ground that testimony is needed, the affidavit supporting the motion (1) must state and show that the testimony is material, and (2) must state that due diligence has been used to procure the testimony and describe the diligence and why it failed, if known. TEX. R. CIV. P. 252. In determining whether there has been an abuse of discretion, we view the evidence in the light most favorable to the trial court and indulge every presumption in favor of the judgment. *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 526 (Tex. App.—Houston [1st Dist.]

1994, no writ) (citing *Parks v. U.S. Home*, 652 S.W.2d 479, 485 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd)).

**B. Analysis**

Appellants moved for a continuance of submission of the summary judgment motions on the ground that they required the testimony of two witnesses, Gimber, a defendant, and Paula Castello, the property manager of the Owners Association. In support, they presented evidence that they made requests for deposition dates in October 2012 and January, February, March, and April 2013. Their evidence also showed that when the defendants offered to present Gimber in April, they did so with only four days' notice and appellants had to decline.

We conclude that the trial court did not abuse its discretion in denying the motion for continuance. The summary-judgment motions were filed after the May 1, 2013 discovery deadline, and almost two years after the case was filed. Appellants had also previously sued defendants in 2010, failed to conduct any depositions, and non-suited their claims against the defendants when the defendants filed summary-judgment motions in that lawsuit.

Appellants presented no evidence that they served notices of depositions or moved to compel the requested depositions before the discovery deadline in the present case, nor did their motion for continuance indicate that any efforts had been made to depose the desired witnesses after the motions for summary

7

judgment were filed. Accordingly, we hold that the trial court's denial of the motion for continuance was not an abuse of discretion. *See* TEX. R. CIV. P. 252 (in seeking continuance for want of testimony, movant must show due diligence in attempting to procure it); *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 217–18 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (no abuse of discretion in denying motion for continuance where movant did not demonstrate due diligence in procuring testimony); *see also Johnston v. Kruse*, 261 S.W.3d 895, 904 (Tex. App.—Dallas 2008, no pet.) (no abuse of discretion in denying motion for continuance where request was made after case had been pending for two years and record showed that movant was aware of need for testimony well before motion was filed).

## Summary Judgment

In their second, third, and fourth issues, appellants contend that the trial court erred in granting summary judgment on their breach of contract, tortious interference, and fraud claims.

### A. Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch*

8

*Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524.

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

When the movant urges multiple grounds for summary judgment and the order does not specify which was relied upon to render the summary judgment, the appellant must negate all grounds on appeal. *McCoy v. Rogers*, 240 S.W.3d 267,

271 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993)). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Ellis*, 68 S.W.3d at 898 (citing *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied)).

## B.   Breach of Contract

In their second issue, appellants contend that the trial court erred in granting summary judgment on their breach of contract claim.

### 1.   Applicable Law

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

### 2.   Analysis

Appellees moved for no-evidence and traditional summary judgment on appellants' breach of contract claim. In their no-evidence motion, appellees argued that appellants could not provide evidence to support any element of the claim. In

their traditional summary-judgment motion, appellees argued that the March 3, 2009 contract was illegal and unenforceable because it violated Chapter 4102 of the Texas Insurance Code. Chapter 4102 requires a person who accepts compensation to act on behalf of an insured in negotiating settlement of insurance claims to hold a public insurance adjuster's license. *See* TEX. INS. CODE ANN. § 4102.001(3) (West 2009); § 4102.051 (West 2009). It also provides that any contract violating this requirement may be voided at the option of the insured and that the insured will not be liable for past or future payments under the voided contract. *See id.* § 4102.207 (West 2009). Appellees further argued that because the March 3rd contract was illegal, and the Contractor Agreement was intertwined with the March 3rd contract, the Contractor Agreement was likewise illegal and could not be enforced.

In response to the summary-judgment motions, appellants argued that the contracts did not violate the Insurance Code and that there was a fact question regarding whether Kris William was acting as a public adjuster.

The trial court granted summary judgment without specifying its reasons for doing so. In their appellate brief, appellants argue that summary judgment was improper because they presented evidence to support the damages element of breach of contract, including evidence of work performed by Kris William and evidence that Kris William was entitled to payments under the contracts.

11

Appellants do not address the other elements of their claim, nor do they argue that summary judgment was improper on the ground urged in the traditional summary-judgment motion—that the contracts were void and unenforceable because they violated the Insurance Code.

To prevail on appeal, the appellants were required to negate all possible grounds raised by the appellees' summary-judgment motions. *See McCoy*, 240 S.W.3d at 271; *Ellis*, 68 S.W.3d at 898. In their responsive brief, the appellees contend that appellants' argument that the trial court erred in rendering summary judgment on their breach of contract claim must fail because appellants did not address or negate on appeal the possible summary-judgment ground of illegality.

We agree that summary judgment on appellants' breach of contract claim "may have been rendered, properly or improperly," on the ground of illegality. *Ellis*, 68 S.W.3d at 898. Because appellants do not challenge this ground on appeal, we must affirm the trial court's judgment as to breach of contract. *See McCoy*, 240 S.W.3d at 271 (when summary-judgment order does not specify grounds, the appellant must negate all grounds on appeal); *Ellis*, 68 S.W.3d at 898 (same); *see also Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 247 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (to prevail on breach of contract claim, plaintiff must prove existence of valid contract).

We overrule appellants' second issue.

## C.    Tortious Interference

In their third issue, appellants contend that the trial court erred in granting summary judgment on their tortious interference claim.

### 1.    Applicable Law

The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of the plaintiff's damage, and (4) that actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). "[A] party cannot tortiously interfere with its own contract." *Holloway*, 898 S.W.2d at 796.

"When the defendant is both a corporate agent and the third party who allegedly induces the corporation's breach, the second element is particularly important." *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456–57 (Tex. 1998) (per curiam). "The acts of a corporate agent on behalf of his or her principal are ordinarily deemed to be the corporation's acts." *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (citing *Holloway*, 898 S.W.2d at 795). To show that an agent has interfered with his or her principal's contract, the plaintiff must prove the agent acted solely "in furtherance of [his or her] personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract." *Id.* (quoting *Holloway*, 898 S.W.2d at 796); *see Powell Indus., Inc.*, 985

S.W.2d at 457 ("Because a corporate officer's acts on the corporation's behalf usually are deemed corporate acts, a plaintiff must show that the agent acted solely in his own interests.").

"[A]gents are not liable for tortious interference with their principals' contracts merely because they have mixed motives to benefit both themselves and their principals." *Latch*, 107 S.W.3d at 545 (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997)). Rather, the plaintiff must prove the agent acted "so contrary to the corporation's interests that his or her actions could only have been motivated by personal interest." *Id.* (quoting *ACS Investors, Inc.*, 943 S.W.2d at 432); *see Powell Indus., Inc.*, 985 S.W.2d at 457 ("The plaintiff must prove that the agent acted willfully and intentionally to serve the agent's personal interests at the corporation's expense."). Significantly, an agent cannot be held to have acted against the principal's interests unless the principal has objected. *Id.* (citing *Powell Indus., Inc.*, 985 S.W.2d at 457 ("[I]f a corporation does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests.)).

2.    **Analysis**

In their summary-judgment motions, appellees argued that there was no evidence showing a willful and intentional tortious act, that the Owners Association could not interfere with a contract to which it was a party, and that the

14

remaining defendants could not be held liable because they were agents of the Owners Association, an incorporated entity. In response, appellants argued that there was evidence of a kickback demand by Gimber which was a willful and intentional act of interference, that Gimber's self-serving actions were not in the nature of an agent, and that therefore these actions could form the basis of a tortious interference claim.

We conclude that the trial court did not err in rendering summary judgment on appellants' tortious interference claim. The March 3rd contract and the Contractor Agreement were executed by Kris William and Centra, the corporate representative of the Owners Association, on behalf of the Owners Association. Thus, the contracts were agreements between the Owners Association and Kris William. *See Gordon v. Leasman*, 365 S.W.3d 109, 114–15 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (when agent executes contract on behalf of principal, principal is party to contract). Because the Owners Association was a party to the contracts, it could not tortiously interfere with them. *See Holloway*, 898 S.W.2d at 796 ("[A] party cannot tortiously interfere with its own contract."). Accordingly, we hold that the trial court did not err in rendering summary judgment on the appellants' tortious interference claim against the Owners Association. *See id.*

With respect to the remaining defendants, Centra, and its successor Cardinal, are corporate representatives of the Owners Association, and Gimber served as the

president of the Owners Association at the time that the contracts were terminated. As agents of the Owners Association, their actions ordinarily are deemed to be the Owners Association's acts, unless appellants demonstrate otherwise. *See Latch*, 107 S.W.3d at 545 (acts of corporate agent are ordinarily deemed to be corporation's acts). Thus, appellants were required to present some evidence that Centra, Cardinal, and Gimber acted against the Owners Association's interests and acted solely in furtherance of their personal interests. *See id.*

In the trial court and on appeal, appellants rely upon Delcid's summary-judgment affidavit averring that Gimber demanded a kickback before the contracts were terminated as evidence of a willful and intentional act of interference, arguing that such a demand cannot be the act of an agent. But even taking this averment as true, appellants presented no evidence that the Owners Association objected to any alleged act of interference by Centra, Cardinal, or Gimber.

In order "to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract," appellants were required to present some evidence that the Owners Association objected to an interfering act by Centra, Cardinal, or Gimber. *Id.* Without evidence that the Owners Association objected to an interfering act by Centra, Cardinal, or Gimber, they cannot be held liable for tortiously interfering with the contracts. *See id.* (agent cannot be held liable for tortious interference if principal has not objected to allegedly interfering

16

act). Accordingly, we hold that the trial court did not err in rendering summary judgment on the appellants' tortious interference claim against Centra, Cardinal, and Gimber. *See id.*

We overrule appellants' third issue.

**D.    Fraud**

In their fourth issue, appellants contend that the trial court erred in granting summary judgment on their fraud claim.

**1.    Applicable Law**

To prevail on its fraud claim, a plaintiff must prove that the defendant (1) made a material misrepresentation, (2) knew the representation was false or made it recklessly without any knowledge of its truth, (3) intended to induce the plaintiff to act upon the representation, and (4) the plaintiff relied upon the representation and thereby suffered injury. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). When one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

**2.    Analysis**

In their summary-judgment motion, appellees argued that appellants' fraud claim must fail because plaintiffs did not identify a specific misrepresentation that

was made with intent that plaintiffs rely upon it. They argued that to the extent the fraud claim was based upon the alleged demand for a kickback, a kickback demand alone cannot support a fraud claim. They also argued that there was no evidence of reliance on any representation, or any injury caused thereby. In the appellants' summary-judgment response, they argued that Delcid's averment that Gimber demanded a kickback supported their fraud claim because the contracts were terminated when he refused to comply.

We conclude that the trial court did not err in rendering summary judgment on appellants' fraud claim. Appellants argue that they were fraudulently induced to enter the contracts when appellees had no intention of performing without a kickback. But appellants presented no evidence that any appellee knew that any representation made prior to the execution of the contract was false or that any appellee induced appellants to enter the contract with no intention of performing absent a kickback. *See Ernst & Young, L.L.P.*, 51 S.W.3d at 577; *Formosa Plastics*, 960 S.W.2d at 48. Taking as true Delcid's averment that Gimber demanded a kickback after the contracts were executed, a kickback demand made after the execution of a contract, alone, does not support a finding that a defendant induced a plaintiff to enter a contract with no intention of performing. *See Smith v. KNC Optical Inc.*, 296 S.W.3d 807, 812–13 (Tex. App.—Dallas 2009, no pet.) (evidence of kickback demands made after execution of contract do not support

18

fraudulent inducement claim). Appellants adduced no evidence showing that Gimber or any other defendant intended, in March, to make performance of the contract conditional upon receipt of a kickback. Accordingly, appellants failed to present evidence raising a genuine issue of material fact as to this element of their fraud claim, and consequently, summary judgment on appellants' fraud claim was proper. *See Tamez*, 206 S.W.3d at 582; *Hahn*, 321 S.W.3d at 524.

We overrule appellants' fourth issue.

## Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.