In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00323-CV
_____

DANIELDEAN.COM, LLC, Appellant

V.

ROBERT LAPOLE JR. AND BLUE STAR STAMPING, LLC,
Appellees

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 21-07-09292-CV

MEMORANDUM OPINION

When a case is dismissed for want of prosecution, "[t]he court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney [to appear] was not intentional or the result of conscious indifference but was due to an accident or mistake or that the

1

failure has been otherwise reasonably explained."[1] The trial court dismissed DanielDean.com, LLC's ("DDC") case after the attorney who represented DDC failed to appear when the trial court called the case for trial on the morning that, under the trial court's scheduling order, the case had been scheduled for trial on the court's two-week rolling docket. After the case was dismissed, DDC's attorney filed a combined Motion to Reinstate and Motion for New Trial, supported by his affidavit. In the affidavit, the attorney explained that although he was at the courthouse, he was in another district court when the trial court called the docket due to a conflicting trial setting and that he had instructed his clerk to "check in" with the 457th, which to him "meant for [his] clerk to walk down to the 457th [District Courtroom] to let them know [that he was] in the 418th [District Courtroom] and [would] be there shortly." According to the affidavit, rather than walking down the hall to let them know he was in another courtroom, his clerk checked the 457th District Court's webpage "for an update," which resulted in the attorney's unintentional failure to appear. According to DDC, this reasonably explains why its

---

[1] Tex. R. Civ. P. 165(a)(3); *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995).

2

attorney was not present when the trial court called its case on the two-week rolling docket call, is an excuse that doesn't show that DDC (based on the conduct of its attorney) was consciously indifferent, and that DDC's failure to appear when the trial court called the docket on the morning the case was set for trial resulted from an accident or mistake.

The trial court denied DDC's combined Motion to Reinstate and Motion for New Trial. In the judgment, which the trial court refused to set aside, the trial court dismissed DDC's claims for want of prosecution and awarded Blue Star Stamping, LLC, which had intervened into the case through a Plea in Intervention, $19,891 on its counterclaim. In addition, the trial court awarded Blue Star Stamping $4,795 in attorney's fees as the prevailing party on its breach of contract claim, plus additional conditional awards of attorney's fees for appeals that are contingent on Blue Star Stamping's prevailing on any future appeals.

DDC appealed and raises two issues for our review. First, DDC argues the trial court erred in denying its combined Motion to Reinstate and Motion for New Trial. Second, DDC contends the evidence is legally and factually insufficient to support the damages and attorney's fees that the trial court awarded against DDC.

3

We hold the trial court abused its discretion in denying DDC's combined Motion to Reinstate and Motion for New Trial. We reverse the judgment and remand the case for further proceedings consistent with the Court's opinion.

## Background

On July 6, 2021, DDC sued Robert Lapole, Jr. alleging that Lapole hired DDC on December 10th, 2019 "to perform earth and dirt moving services" for Lapole on property located at 19327 Stuebner Airline Road, Spring, Texas. According to the petition, DDC performed the work "per the terms of the agreement," started the work on December 10, 2019, and worked until February 19, 2020. On February 20, 2020, DDC sent Lapole an invoice for $81,757 the work it performed at Lapole's request at the property in Spring. DDC further alleged that despite its timely demand for payment, it had not been paid for its work. In its petition, DDC sought to recover damages against Lapole on three theories: (1) breach of contract; (2) quantum meruit; and (3) for Lapole's alleged violation of the Texas Theft Liability Act.[2]

---

[2]Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (Texas Theft Liability Act).

After he was served with DDC's suit, Lapole filed a general denial. In his answer, Lapole also alleged that he wasn't liable in his individual capacity under the contract he signed with DDC because in dealing with DDC, he was acting as Blue Star Stamping's representative, and Blue Star Stamping was the owner of the property where DDC had performed the work.

The trial court signed a Docket Control Order in the case that, among other things, placed the case on a two-week rolling docket that began at 9:00 a.m. on July 5th, 2022.[3] The Docket Control Order states: "If the case is not assigned by the second Friday following this date, then the case will be reset. **You are instructed to monitor the Court's website to determine at what date and time you should appear**."[4]

After the trial court signed the Docket Control Order, Blue Star Stamping filed a Plea in Intervention ("Plea"), which is dated December 1, 2021. The same attorney who represented Lapole filed the Plea in Intervention for Blue Star Stamping. In its Plea, Blue Star Stamping alleged that it owns the tract where DDC performed the earth and dirt

---

[3]A calendar shows July 5th was a Tuesday.
[4]Bold in original.

5

moving work, and that it operates "its metal fabrication business from the Property." Blue Star Stamping further alleged that it authorized Lapole to obtain bids for the site work it needed at the Property, that Lapole then obtained bids, and that Blue Star Stamping awarded the work to DDC. Blue Star Stamping's Plea includes counterclaims for affirmative relief against DDC. In its Plea, Blue Star Stamping alleged that after DDC was awarded the work, DDC "failed to perform its work consistent with the Contract . . . [and] in a good and workmanlike manner." Blue Star Stamping alleged that it spent $89,884 to complete DDC's work. The counterclaims raise three theories of liability: (1) breach of contract; (2) breach of warranty; and (2) alleged violations by DDC of the Deceptive Trade Practices Act.[5]

In June 2022, DDC, Lapole, and Blue Star Stamping filed a "Joint Trial Notice" in which they represented to the trial court that they were ready for trial. Under a paragraph entitled "Special Needs or Accommodations," the attorney for DDC noted that he had limitations on his "abilities due to three hospitalizations in [the] past six months that

---

[5]Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (Deceptive Trade Practices).

6

ha[d] kept him from work for 15 weeks since December 2021," which limited his "mobility and require[d] a driver." Finally, the Joint Trial Notice represents that the attorneys filed "[a] conflicts notice . . . separately." Even so, no "conflicts notice" is included in the Appellate Record.

On the same day the parties filed the Joint Trial Notice, DDC (through its attorney) filed a trial witness list, a trial exhibit list, and a proposed jury charge.[6] Lapole and Blue Star Stamping also filed trial exhibits and trial witness lists that day.

On June 23, 2022, the trial court's court coordinator notified the parties' attorneys by email that "[y]ou are required to appear in the above styled and numbered cause for Bench Trial on Tuesday, 07/12/2022 at 9:00 A.M., by Oral Hearing in the 457th District Court [as you are the] #3 [case] on Bench Trial line up."

On July 12, 2022, at around 9:00 a.m. the trial court called the case for trial, presumably along with the other case on its "bench trial line up" for that day to try the cases that were on the court's docket, presumably

---

[6]There isn't a demand for a jury in the Clerk's Record, and there is no demand for a jury noted on the trial court's docket sheet.

7

starting with the first case. Although the number one case was called and required a trial, the trial court also called the other cases on the docket for announcements. We presume the trial court called all cases at 9:00 and wanted the attorneys present so that all the cases could be scheduled for trial on a day during the remainder of the week after the trial court completed the trial of the first case or if any of the cases called to trial on July 12th were settled or continued. When the trial court called DDC's case, the attorney for Lapole and Blue Star Stamping announced that he was there "on behalf of Robert Lapole, Jr." Then, the trial court noted that the attorney for DDC was not present. After that, the trial court asked Lapole's attorney whether Lapole had "any counterclaims," and Lapole's attorney said: "We do."[7] Lapole's attorney told the judge that Mr. Lapole wasn't present for the docket call, but that he "had Lapole standing by]" and if the court wanted him to get Lapole on the phone, Lapole could probably get to the courthouse in about thirty minutes. Following that exchange, the trial court asked Lapole's attorney: "You're

---

[7]Lapole did not file any counterclaims in the suit, but Blue Star Stamping, which had intervened in the suit is the party that filed the counterclaims against DDC.

announcing ready on that case?" Lapole's attorney responded: "Yes[,]" I "[h]ave the file right here and we're ready to go."

The trial court then asked the court coordinator to check to see when DDC's attorney was given notice of the hearing. The court coordinator advised the trial court that the court's records reflected the court sent DDC's attorney notice of the hearing on June 23rd of the fact that the case was the number three case on the court's docket for a hearing on July 12th, which was scheduled to begin at 9:00 a.m. After receiving that information, the trial court announced: "I'm going to go ahead and DWOP the plaintiff's case. And we will do your counterclaim prove-up, I guess, over the lunch hour."

When the court reconvened (presumably around noon), the attorney representing Lapole and Blue Star Stamping explained that "Mr. Lapole owns a company called Blue Star Stamping, LLC[,]" and that DDC was hired to "do some site work" because Blue Star Stamping wanted to expand its operations in Harris County. As the owner of the land where DDC had performed the work, Blue Star Stamping's attorney explained, Blue Star Stamping was the party that entered the contractual relationship with DDC even though Lapole is the person who signed the

9

contract. And because Blue Star Stamping is the party that needed the work performed, the attorney explained, it was Blue Star Stamping that had been damaged when DDC did not do the work correctly.

During the post-answer default hearing on July 12th, Blue Star Stamping called two witnesses: Robert Lapole and Blue Star Stamping's attorney, J. Randall Bays. Bays' testimony is relevant solely to Blue Star Stamping's claim for attorney's fees.

When he testified, Lapole explained that he and his wife own Blue Star Stamping. Lapole said that in 2019, Blue Star Stamping needed some site work done on some property that it owned in Harris County so that it could expand its operations there. Lapole explained that he obtained bids on behalf of Blue Star Stamping in negotiating the agreement with DDC to perform the site work on the property where Blue Star Stamping operates its business. Yet after DDC was awarded the work, DDC did the work "poorly," according to Lapole.

Under the contract he signed on Blue Star Stamping's behalf, Lapole explained, the contract required that DDC be paid $101,000 for the work under its contract. But when DDC left the job, the work failed to pass an inspection performed by Harris County inspectors. Lapole

testified that Blue Star Stamping hired and paid "various subcontractors" to complete DDC's work. Lapole also testified that Blue Star Stamping paid for repairs that DDC caused to an underground fiber-optic cable system, which Lapole claimed DDC had damaged when it worked on the site. According to Lapole, after accounting for all offsets and credits, Blue Star Stamping was entitled to recover $19,891 in damages against DDC, an amount that does not include the attorney's fees that Blue Star Stamping incurred in the dispute.

J. Randall Bays, Blue Star Stamping's attorney, testified that he has been practicing law for 31 years and that he and another attorney who worked with him in his firm charged Blue Star Stamping and Lapole $5,994 for the work they had performed on the case. According to Bays, 80% of that time, or $4,795.20, represented a fair and reasonable fee for the work that the firm's work for Blue Star Stamping in the case based on the hourly rates that he and the other attorney in his office charge, $350 and $230 respectively. Based on the itemized records they kept of their time, Bays testified that in his opinion $4,795.20 was a "fair and reasonable fee for the work that we have done representing Blue Star Stamping in this case[.]" Invoices from the firm were marked as Exhibit

11

1 and the Reporter's Record shows the exhibit was admitted into evidence during the hearing. Yet the court reporter failed to attach a copy of Exhibit 1 to the Reporter's Record and Exhibit 1 is not in the Appellate Record. There was no testimony in the hearing whatsoever regarding attorney's fees for appeals. At the end of the hearing, the trial court announced it would award Blue Star Stamping $19,891 in damages plus attorney's fees of $4,795.20.

On July 14, 2022, the trial court signed a final judgment. In the judgment, the trial court dismissed DDC's claims "for want of prosecution[,] awarded Blue Star Stamping $19,891.00 in damages, and awarded Blue Star Stamping attorney's fees of $4,795.20." Finally, the judgment includes conditional awards of attorney fees, which total $22,500, that are contingent on Blue Star Stamping prevailing through each of the levels to which DDC could possibly appeal.

Within thirty days of the date the trial court signed the judgment, DDC filed a combined Motion to Reinstate and Motion for New Trial. For convenience, which we will refer to this combined motion as the Motion to Reinstate. To establish that its attorney's failure to appear for the hearing on July 12th wasn't intentional and didn't result from a conscious

12

indifference but was instead the result of an accident or mistake, DDC filed an affidavit signed by its attorney, Keith Gilbert. In his affidavit, Gilbert explained that he came to the Montgomery County Courthouse on July 12th, 2022, but that he had two trials set at the same time on that day: (1) a case that involved an "enforcement action" in the 418th District Court; and (2) his case against Lapole "for breach of contract," the case filed in the 457th District Court. According to Gilbert's affidavit, when he came to court on July 12th, he came with his clerk because he was having "medical issues," which he said limited his mobility and his ability to drive.

In the affidavit, Gilbert explains that he thought the rules in Montgomery County that applied to conflicting trial settings required attorneys to appear first in cases involving criminal trials, next in cases involving matters of family law, and third in cases involving civil trials. Gilbert swore that on July 12th, 2022, he arrived at the courthouse expecting that the case he had in the 418th District Court, a family law case that conflicted with the setting he had in the 457th District Court, would be reset. So, Gilbert said that he "advised [his] clerk to check-in with the 457th[,]" and that after he was "released from the 418th, having

obtained a reset [in the case in that court], I was advised that I was still #3 [in DDC v. Lapole]." Gilbert swore that "I mistakenly understood that case #1 was called and my [DDC] case was still #3."

Gilbert explained that, when he returned to his office on July 12th, he "contacted the coordinator and opposing counsel Bays by email to see if it was possible considering how fast docket position can be to be excused [] from the [DDC] trial being called on Thursday July 14, 2022 for a personal day that was important to me." It was then, Gilbert said, that he learned the trial court had dismissed DDC's case against Lapole and had rendered "a default judgment against [his] client." When Gilbert contacted his clerk, he said that he learned,

> that check-in with the 457th means something different to me than my clerk. To me it meant for my clerk to walk down to the 457th and let them know I'm in the 418th and will be there shortly. To my eternal regret, to my clerk it meant to check in the 457th webpage for an update.

In his affidavit, Gilbert offered to personally "cover any expense or fees that Blue Star Stamping may have incurred in obtaining the default judgment[.]" Gilbert also swore that his "failure to appear was due to an accident or mistake[,]" and not to a "conscious indifference regarding [his] non-appearance" in the 457th District Court.

14

DDC's Motion to Reinstate also alleges that DDC has meritorious defenses to Blue Star Stamping's counterclaim. First, DDC claimed that it contracted with Lapole, that it didn't have a contract with Blue Star Stamping, and that Lapole never disclosed he was acting as Blue Star Stamping's agent when he signed the contract to have the earth and dirt moving work performed with DDC. Second, DDC alleged that it never promised, performed, sought to perform, or was paid for its services by Blue Star Stamping. Third, DDC claimed that after all just offsets and credits, it was owed "at least $52,400" on its contract, plus interest, attorney's fees, and court costs. To support its allegations that Lapole never disclosed that he was acting for Blue Star Stamping in negotiating the contract, DDC attached six exhibits to its Motion to Reinstate. These exhibits show that in his correspondence with DDC, Lapole made no written disclosure of his relationship with Blue Star Stamping or of the fact that he was acting in representative capacity for Blue Star Stamping when he negotiated the contract with DDC. For example, DDC's offer, which is dated December 8, 2019, is attached as Exhibit B-1 to DDC's Motion to Reinstate. The offer is addressed to "Customer: Bob Lapole," not Blue Star Stamping. An email acceptance at an email address

15

associated with a customer named "Bob Lapole," dated December 10, 2019, and addressed to DDC states: "Please go forward with option B[,] Thank You[,] Bob[.]"

Daniel Dean's affidavit and the affidavit of Shane Towery, an investigator for Project Resources Group, which are also exhibits attached to DDC's Motion to reinstate, support DDC's claim that fact issues exist as to DDC's liability to Blue Star Stamping for damages under DDC's contract for the work. For instance, Dean (DDC's managing member) swore that Lapole breached the agreement with DDC and "after all just allowances" DDC is owed "at least $52,400" for its work. Towery's affidavit controverts Blue Star Stamping's allegation that DDC "damaged a fiber optics cable," which was on adjoining land that Blue Star Stamping claimed resulted DDC damages and resulted in it "incurring charges of $12,184." According to Towery, a "marking company, USIC," was solely responsible for the "damage done to the cable[,]" Towery swore that DDC "was not responsible" for damaging the cable, and that USIC paid the entity that owns the cable system for those repairs.

16

Lapole and Blue Star Stamping filed a response to DDC's Motion to Reinstate, but they didn't attach any exhibits or affidavits to their response. In their response, Lapole and Blue Star Stamping argued that DDC's attorney couldn't "meet the standard for granting a new trial" because DDC's attorney had acted intentionally by failing to appear in the 457th District Court. The attorney's failure to appear in court, Blue Star Stamping alleged, wasn't the result of an accident or a mistake but instead resulted from Gilbert's intentional decision to attend to the trial of the matter in the 418th District Court. Furthermore, Lapole and Blue Star Stamping alleged that after the 418th District Court reset Gilbert's case in that court, Gilbert failed to personally "check in with [the 457th court] or its staff." Under the administrative rules that apply to the region, the response argues, attorneys with conflicts are supposed "to call the affected Judge's attention to all dual settings as soon as they are known."[8] The response suggested that Gilbert ignored that requirement, and Lapole and Blue Star Stamping alleged that even though Gilbert was aware of the administrative rule, he hadn't "burdened the 457th [court]

___

[8]Sec. Admin. Jud. Reg., Reg. R. Admin., 10.2.1.

17

coordinator with notice of the conflicting trial engagement" of his case in the 418th District Court.

In August 2022, the trial court conducted a hearing on DDC's Motion to Reinstate. The parties didn't present any additional evidence in the hearing, and the parties presented the same arguments they relied on in the Motion to Reinstate and the response. After the trial court denied DDC's Motion to Reinstate, DDC asked the trial court to provide the parties with written findings of fact and conclusions of law to support its ruling. In September 2022, the trial court signed written Findings of Fact and Conclusions of Law. Among its findings, the trial court found that DDC: (1) "failed to appear at the July 12, 2022 trial[;]" (2) did not request that the case "be continued[;]" and (3) "at no point informed the court of conflicts it may have had with the trial or date of trial." Still, the trial court didn't expressly find that Gilbert's failure to appear was intentional, the result of conscious indifference, or that Gilbert's failure to appear in court wasn't due to an accident or mistake.

In September 2022, DDC filed a request for additional findings, and it asked the trial court to, among other things, make a finding that the "[n]on-appearance by Keith Gilbert on July 12, 2022 at 9:00 a.m. was by

18

accident or mistake." Despite DDC's request, the trial court made no additional findings. After that, DDC filed a timely notice of appeal.

## Standard of Review

We review a trial court's ruling on a motion to reinstate for abuse of discretion.[9] An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles or its decision is arbitrary or unreasonable.[10] As to matters of fact, an abuse of discretion occurs if the record establishes "that the trial court could reasonably have reached only one decision."[11]

Under Rule 165a(3), a court must "reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained."[12] A failure to appear for trial is not intentional or the result

---

[9]*Smith*, 913 S.W.3d at 467.
[10]*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).
[11]*Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).
[12]Tex. R. Civ. P. 165a(3).

of conscious indifference merely because it is deliberate, but it must be without justification.[13]

Besides dismissing DDC's claims against Lapole, the trial court awarded Blue Star Stamping a default judgment on the counterclaim for breach of contract that Blue Star Stamping raised in its Plea. After the trial court signed the judgment, DDC moved to Reinstate and asked the trial court to reinstate the case, to set aside the judgment, and to grant DDC's request for a new trial.

When a trial court grants a judgment by default and the party that suffered the default judgment files a motion for new trial, an appeals court reviews a trial court's ruling on the motion for new trial for abuse of discretion.[14] To establish that an abuse of discretion occurred, the party that suffered the default judgment must provide the trial court with sufficient evidence with its motion for new trial to establish three things: (1) that its failure to appear was not intentional or the result of conscious indifference, but was instead the result of an accident or mistake; (2) that it has a meritorious defense if could present if granted

---

[13]*Smith*, 913 S.W.2d at 468.
[14]*Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984).

20

a new trial; and (3) that if awarded a new trial, the ruling will not unduly delay or injure the other parties in the case.[15] When the uncontroverted factual allegations in a defaulted party's motion for new trial establish the above three things, the trial court abuses its discretion if it denies the motion.[16]

## Discussion

In its first issue, DDC argues that the trial court abused its discretion by failing to grant its Motion to Reinstate and by denying it's Motion for New Trial. According to DDC, the evidence attached to its Motion to Reinstate was uncontroverted and established that Gilbert's failure to appear in the 457th District Court wasn't the result of his conscious indifference but resulted instead from an accident or mistake.

We agree with DDC that the evidence it presented to support Gilbert's excuse for failing to appear was uncontroverted. The appellees attached no evidence to their response to DDC's motion to reinstate.[17]

---

[15]*Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009); *see Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (1939).

[16]*See In re Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021).

[17]*Dir., State Employees Worker's Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994) ("If the factual assertions in the defendant's affidavit are not controverted by the plaintiff, the defendant satisfies his burden

21

Blue Star Stamping and Lapole also presented no evidence during the hearing the trial court conducted on DDC's Motion to Reinstate. Thus, DDC satisfied its burden to put forth facts that, if true, negated DDC's intentional or conscious indifference to DDC's failure to appear in court for the July 12th trial.

Gilbert's affidavit reflects that he thought that he needed to first appear in the family law case when faced with a conflicting trial setting that involved the family law case that he had in the 418th District Court.[18] In Montgomery County, the version of Local Rule 10 that applied in 2022 and governed conflicting trial and ancillary settings required the Judges of the courts in Montgomery County to resolve conflicts in schedules by observing cases in the following order of priority:

> Mental Health Code proceedings[;] Juveniles cases[;] Criminal cases[;] Cases given preference by statute[;] Preferentially set cases[;] Cases with the lowest file number; Cases with the earliest setting request date.[19]

if his affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct by the defendant.").

[18]*See* Tex. Fam. Code Ann. § 157.061 (requiring trial courts to give motions to enforce child support and motions asking the court to hold someone in contempt preferential settings).

[19]Montgomery Cty Local Rules of the Dist. Courts R. 10 (superseded by Montgomery County Rules of Administration for Civil Cases R. 4.7, which changed the above order of priorities effective Jan. 1, 2023). The

To our knowledge, unlike the preferential settings that are required in some types of family law cases by statute, no statutes require a breach of contract case to be given a preferential setting.[20]

To be fair, when the trial court dismissed DDC's case and granted Blue Star Stamping a post-judgment default, the judge was apparently unaware of Gilbert's conflicting setting in the 418th District Court. But Gilbert brought the trial court's attention to the existence of the conflicting settings in his Motion to Reinstate. He also made the court aware that the matter in the 418th District Court was an enforcement action, and under the Family Code, enforcement actions must be given preferential settings.[21]

On appeal, Lapole and Blue Star Stamping argue that Gilbert's affidavit shows that he deliberately chose not to appear in the 457th District Court's courtroom on the morning of trial by attending to the trial setting of the matter that he had scheduled in the 418th District

_____

record does not show what the case number was for the case in which Gilbert appeared for his client in the 418th District Court.

[20]Tex. Fam. Code Ann. § 157.061(c).

[21]*Id.*

Court. Yet under *Craddock*, a person's "failure to respond is not considered to be intentional or due to conscious indifference merely because it is deliberate; it must also be without adequate justification."[22] Gilbert gave the trial court an explanation, which was uncontroverted, that justified why the 457th wasn't informed of the fact that Gilbert was in the 418th District Court. Gilbert relied on his clerk to inform the 457th District Court of that fact but the clerk, due to a misunderstanding, didn't communicate the message to the 457th District Court.

The evidence explaining why Gilbert wasn't present in the 457th District Court's courtroom was uncontroverted. That said, we recognize that the Local Rules in Montgomery County apply to Gilbert and imposed a "duty" on him as DDC's attorney of record "to notify all courts in which [the] attorney has conflicting settings as soon as practicable" of his conflicting setting.[23] In its findings of fact, the trial court found that "[DDC] at no point informed the court of conflicts it may have had with the trial or date of trial." We agree with the trial court that the record doesn't show that Gilbert complied with his duty to the court to notify it

---

[22]*In re Sandoval*, 619 S.W.3d at 723.
[23]Montgomery Cty Local Rules of the Dist. Courts R. 10.

as soon as practicable under the Montgomery County Local Rules of the conflict in his trial schedule. But Gilbert's failure to comply with Local Rule 10 is an issue that, if addressed, is a matter of sanctions that the court should impose on Gilbert, not his client.[24]

In his affidavit, Gilbert also explained why he left the courthouse on July 12th without personally checking in with the 457th District Court. Gilbert swore that upon his release from the 418th District Court, he "was advised that" the DDC case was still in the third position on the docket in the 457th District Court and mistakenly understood the number one case on the docket was called to trial. Gilbert did not state what hour he left the courthouse, but the trial court dismissed DDC's case against Lapole around 9:00 a.m. After Gilbert left the courthouse, he sent Bays an email in which he advised Bays that he "would like the court to excuse [him]" from trial on "Thursday [July 14th] so that he could participate in a graveside service in memory of his mother's death." That email, which is among the exhibits attached to DDC's motion, was sent

---

[24]*See TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (explaining that a just sanction "should be visited upon the offender").

to Bays at 12:21 p.m. on July 12th. When Bays didn't respond, Gilbert forwarded the email to the 457th District Court's court administrator, advising her that he had not "heard back" from opposing counsel. In his email to the court coordinator, which reflects the email was sent to her at 2:42 p.m., Gilbert asked whether he needed to "file a motion?" At 2:58 p.m., the court administrator advised Gilbert: "I'm sorry, your case was on our docket for today. Randy is currently in our court for another bench trial as well." The "other bench trial" was the number one case the trial court had called for trial on the morning of July 12th.

The trial court's Docket Order states that parties are to "monitor the Court's website to determine at what date and time" to appear. Gilbert's clerk apparently thought monitoring the court's website was what was required. Gilbert's excuses for failing to appear in the 457th District Courtroom and for leaving the courthouse, which were uncontroverted, if true, offer a reasonable explanation that in our opinion explain why he wasn't present in the courtroom to make an announcement at 9:00 a.m. on the morning of the trial and to explain why the judge of the 457th District Court wasn't aware that Gilbert was attending to a conflicting setting, an enforcement hearing in the 418th

26

District Court. Moreover, nothing in the record implicates DDC as being complicit in Gilbert's conduct—as Gilbert's client, DDC had the right to expect that its attorney of record would appear on July 12th in the 457th District Court's Courtroom at 9:00 a.m. or that its attorney would file the appropriate motions with the court to avoid having its case dismissed.

The proof that Gilbert was tied up in one court and believed (even if mistaken) that his clerk had contacted the other court about his conflict is also a justification sufficient to negate Gilbert's intent or conscious indifference to his responsibility to appear in person for his client in the 457th District Court.[25] Simply put, even if Gilbert did not discharge his duty under the Local Rules or the trial court's order to notify the 457th District Court of his conflict, the uncontroverted evidence attached to DDC's Motion to Reinstate establishes that Gilbert "did not consciously or intentionally neglect to" appear without justification in the 457th District Court.[26]

---

[25]*See Smith*, 913 S.W.2d at 468 ("Proof of justification—accident, mistake, or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied.").

[26]*Id.* at 468 (holding an attorney's mistaken understating that a continuance would be granted was a reasonable justification to negate intent or conscious indifference); *see also Riese v. Stutts*, No. 09-19-00092-

Next, we examine whether DDC established that it has a meritorious defense to Blue Star Stamping's counterclaims.[27] Under Texas law, deciding whether a party has a meritorious defense must be based on the evidence the defendant includes with his motion, regardless of whether the opposing party filed evidence to controvert those facts.[28] To establish a meritorious defense, the party that suffered the default must allege "facts which in law would constitute a defense to the plaintiff's cause of action" and support those facts "by affidavits or other evidence providing prima facie proof that the defendant has such a defense."[29]

---

CV, 2021 WL 1031144, at *4 (Tex. App.—Beaumont Mar. 18, 2021) (no pet.) (mem. op.) (holding that the attorney's affidavit explaining that a mistake was made by a member of the attorney's staff in calendaring the date for the defendant's answer was a justification sufficient to negate intent and conscious indifference when the defendant failed to file a timely answer to the plaintiff's suit); *McPeters v. Montgomery Cnty.*, No. 09-09-00451-CV, 2010 WL 2171664, at * 3 (Tex. App.—Beaumont May 27, 2010, pet. denied) (reversing the trial court's judgment dismissing the plaintiff's case when the plaintiff established in a motion to reinstate that her attorney's failure to appear for the trial was based on the attorney's mistake).

[27]*Lerma*, 288 S.W.3d at 925.
[28]*Evans*, 889 S.W.2d at 270; *Riese*, 2021 WL 1031144, at *15.
[29]*Lerma*, 288 S.W.3d at 928.

Boiled down, this dispute was about whether DDC, Lapole, or Blue Star Stamping (the company on whose behalf Lapole claims to have signed the contract) breached the contract and the dollar amount in damages, if any, that resulted from DDC's breach. In the affidavit that Dean signed, which DDC attached to its Motion to Reinstate and Motion for New Trial, Dean swore that Lapole "breached his agreement with [DDC]" by refusing "to pay any money" to DDC "after [DDC] gave full credit for the just allowances requested by Robert Lapole, Jr." According to Dean's affidavit, the balance owed DDC "after all just allowances is at least $52,400, plus interest, attorney fees, and court costs."

If true, the fact that DDC is owed money under the contract is a defense to Blue Star Stamping's claim that DDC owes Blue Star Stamping money. That said, it is not a defense to Blue Star Stamping's claim that Lapole was acting as Blue Star Stamping's agent in negotiating the contract with DDC. Under Texas law, "an agent need not disclose his or her principal's identity in order to act on behalf of that

29

principal."[30] Thus, if an agent fails to disclose that he is acting for a principal, both the agent and the principal may be sued on the contract.[31]

Furthermore, in its petition Blue Star Stamping alleged that it incurred damages of $12,184 because DDC "damaged a fiber optics cable and a driveway located on adjoining land[.]" DDC raised a prima facie defense to this part of Blue Star Stamping's claim. In the affidavit of Shane Towery, an investigator for Project Resources Group, Towery swore that he conducted a full investigation and found the marking company, USIC, "solely responsible for damages caused to the [f]iber-optic cable." He also stated that "USIC [had] paid Comcast for repairs to the cable." Finally, Towery swore that DDC "was not responsible for the damage done to the cable." If the cable wasn't properly marked, as Towery claimed, a jury might find that DDC wasn't responsible for damaging the fiber-optic cable. And if USIC paid to repair the cable, as Towery claims, that evidence would also show that DDC is not also liable for the damages already paid by USIC for repairs.

---

[30]*Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003).
[31]*Id.*

Along with existence of an issue of fact on DDC's claim that it is the party that is owed for its work and under the contract Blue Star Stamping concedes the evidence it presented is insufficient to support the trial court's conditional awards of appellate attorney's fees. In its brief, Blue Star Stamping suggests that the Court "modify the Judgment to delete any award of appellate fees."

Last, nothing in the record suggests that granting a new trial would delay or injure the appellees. When the parties were in the trial court, DDC pleaded that granting its Motion for New Trial would "not cause delay, injury or prejudice." That allegation shifted the burden to Lapole and Blue Star Stamping to establish that a new trial could cause them to suffer an injury or a prejudicial delay.[32] In their brief, Blue Star Stamping and Lapole don't argue they will suffer any injury or be prejudiced by a delay; instead, they say "they will not argue" the point, predicting that DDC can't persuade the Court that its failure to appear was not intentional.

---

[32]*Lerma*, 288 S.W.3d at 929.

In the affidavit Gilbert filed to support DDC's Motion to Reinstate, he offered to personally "cover any expense or fees" that Blue Star Stamping incurred in obtaining the judgment against DDC. Here, there is no evidence that the appellees will lose any witnesses or evidence if DDC is awarded a new trial.[33] We hold that Blue Star Stamping and Lapole failed to discharge their burden of proof to show that they would be injured or suffer prejudice that results from the delay tied to awarding DDC a new trial.

To sum it up: For the following reasons, we conclude the trial court abused its discretion in failing to grant DDC's Motion to Reinstate. First, we conclude that DDC's evidence established that its failure to appear was not intentional or the result of conscious indifference but resulted instead from an accident or mistake. Second, we conclude that DDCs evidence established it has a meritorious defense against Blue Star Stamping's breach of contract claim. Third, we conclude that DDC discharged its burden to plead that granting its motion would not unduly

---

[33]*Id.* (cleaned up).

delay or injure the appellees, while the appellees failed to present any evidence to rebut that claim.

## Conclusion

We sustain DDC's first issue, reverse the trial court's judgment, grant the Plaintiff's Motion to Reinstate and Motion for New Trial, and remand the case to the trial court for further proceedings consistent with the Court's opinion.[34] Because DDC's second issue would not result in any greater relief, we do not reach that issue.[35]

REVERSED AND REMANDED.

HOLLIS HORTON
Justice

Submitted on March 28, 2024
Opinion Delivered May 16, 2024

Before Golemon, C.J., Horton and Wright, JJ.

---

[34]Tex. R. App. P. 43.2(d).
[35]*Id*. 47.1.